CITY OF CINCINNATI, APPELLEE, *v.* GAMBLE ET AL., APPELLANTS.

THE STATE, EX REL. ELLIS, CITY SOLICITOR, APPELLEE, *v.* STEWART ET AL., APPELLANTS. (Two cases.)

(Decided April 22, 1940.)

*Mr. John D. Ellis,* city solicitor, and *Mr. Henry M. Bruestle,* for appellees.

*Mr. Ed. F. Alexander,* for appellants.
*Mr. Wm. Jerome Kuertz, amicus curiae.*

BY THE COURT. These cases require us to construe the provisions of Articles XIII and XVIII of the Ohio Constitution, to determine the domain under them of municipal authority beyond the control of the state Legislature on the one hand, and, on the other hand, that municipal domain in which the municipal authority is subordinate to general laws passed by the Legislature.

Long before Article XVIII was incorporated into the Constitution in 1912, and, therefore, at a time when municipal corporations were creatures of the Legislature and possessed no power except such as was conferred upon them by a legislative enactment clearly expressed, the Legislature authorized municipalities to establish relief and pension funds for the benefit of members of the police and fire departments. And these enabling acts made provision for the administration of the funds by boards of trustees, selected in a specified way, upon which was conferred power to make rules and regulations for distribution of the funds including the qualifications of those to whom any portion of the fund should be paid, and the amount thereof. The Legislature authorized the levy of a tax of three-tenths of a mill for each of these departments to be used for the specified purposes of firemen's pensions and police relief.

At the time Article XVIII of the Constitution was adopted by the people in 1912, there existed these two funds, each being administered by boards of trustees selected in the statutory way.

In April, 1927, the council of the city of Cincinnati, acting under a mandate contained in a home rule charter adopted by the people in 1926, passed an administrative code containing a complete plan of administrative organization of the city government. This code

provided for boards of seven members selected in a manner different from that provided in the statutes then in force for the administration of these funds.

Since 1927 these two funds have been administered under the boards selected in the manner provided in the administrative code.

In 1929 the statutory pension and relief provisions (Sections 4600 to 4630, General Code) were amended (113 Ohio Laws, 62, 64) by changing somewhat the qualifications for board membership and conferring upon the board the absolute power to make rules and regulations free of any control by any other city officer, and the duty of making the three-tenths of a mill levy to the extent necessary was made mandatory.

In 1937 the statutes were supplemented by Sections 4612-1 and 4628-1, General Code, which provided that the granting of a pension to any person thereafter should "operate to vest a right in such person, so long as he shall remain the beneficiary of such pension fund, to receive such pension at the rate so fixed at the time of granting such pension."

In 1939, Sections 4609 and 4625, General Code, were amended by abolishing voluntary contributions from the members and substituting therefor a compulsory contribution of two per cent from the salaries of all persons becoming members of the police and fire forces thereafter, and as to existing members, provision was made which, in essence, required similar contribution from them under penalty of waiving all benefits from the funds. In addition, Section 4600, General Code, was amended so as to make mandatory the establishment of a firemen's relief and pension fund according thereto by all municipalities having fire departments supported in whole or in part at public expense. No such provision was enacted as to the police fund.

All these statutes are found in Part 1, Title XII of the General Code, which is captioned "Municipal Corporations," indicating that it was the purpose of the

Legislature to exercise such power as it possessed under the Constitution in relation to local government, rather than the exercise of its power to legislate on matters of state-wide concern under the constitutional provisions. The legal significance of this distinction will be discussed later.

In 1931, the city of Cincinnati, through its council, adopted a "retirement system," providing for disability, retirement pensions, and death benefit allowances, which included as beneficiaries most city employees. All policemen and firemen thereafter appointed were included as beneficiaries under this system and were required to become members, and policemen and firemen previously appointed were extended the option to become members or to continue as members of the system to which they then belonged. Every employee in the "retirement system" was prohibited from becoming or continuing to be a member of either of the other systems.

These three actions challenge the validity of all actions taken by the city officials inconsistent with the provisions of Sections 4600 to 4630, General Code.

In case No. 5773, the plaintiff by injunctive relief seeks to compel the abandonment of the "retirement system" so far as policemen and firemen are concerned and the restoration to the members of those two departments of the contributions made by them to the fund, and restoration to the general fund of all tax money in the fund.

In case No. 5774, the relator seeks by peremptory writ of mandamus, to compel the city to take the necessary steps to establish a board of trustees of the police fund in accordance with the statute.

In case No. 5775 similar relief is asked in relation to the fund for the benefit of the firemen.

The Common Pleas Court sustained the contentions of the plaintiff and relators in their entirety. Peremptory writs of mandamus were issued commanding

the respondents to take the necessary proceedings to reconstitute the boards of trustees of the police relief and firemen's pension funds in accordance with the statutes, and an injunction was granted requiring the defendants to discontinue the "retirement system" so far as it applied to members of the police and fire departments and to restore the funds collected as prayed for. Recognizing that compliance with this injunction involved many difficulties and would place in jeopardy benefits to many persons, the court suspended execution of the injunction pending an appeal. It is those three judgments that are now under review by this court, and, as they involve the same general subject, they were consolidated for the purpose of argument and were submitted together.

While the fundamental basis of our decision is the same in all three cases, we believe it can be developed more clearly by considering the two mandamus cases together and the injunction action separately.

It is at once apparent that the two mandamus actions present the question of the extent of the power of the Legislature to control the form and pattern of municipal governments and the agencies through which they shall exercise the powers conferred and duties imposed upon them.

The funds to be administered, if established at all, must be the result of a tax levied by municipal officials upon property within the municipality, and by contributions by residents within the municipality. They are municipal funds and not state funds. They are raised locally as the result of the action of local officials and would seem clearly to be embraced within the subjects of local government. In administering such funds it is equally clear that a function of local government would be performed. The administrators would be local officers and not state officers. The boards of trustees, whether selected in the manner prescribed by the state statute or the municipal ordinance would

be local officers. They would be municipal officers. These statutes evince no intent on the part of the Legislature to create a state police department, comparable to the state health department, to enforce the state police laws. *State, ex rel. Village of Cuyahoga Heights, v. Zangerle,* 103 Ohio St., 566, 134 N. E., 686, and similar cases, therefore have no application. Of course, a municipality is an agency or arm of the state and when once created by the people of the locality, its officers and boards are bound by the laws passed by the Legislature in the exercise of its constitutional powers. If it is a police law, the municipal officers must enforce it. If it is a law imposing a tax for a state purpose, its levy and collection may be imposed upon the municipal officers. No such case is presented here. The question here is: Has the Legislature, by the enactment of either a general law establishing the entire framework of municipal government or by a law making mandatory the estabishment of one or more offices or boards, the power to control the authority conferred upon a municipality by the provisions of Sections 3 and 7 of Article XVIII of the Constitution, and has it attempted to exercise any such control? We quote these two sections:

"3. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

"7. Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this article, exercise thereunder all powers of local self-government."

By Section 2 of Article XVIII of the Constitution, the Legislature is required to pass general laws for the incorporation and government of cities and villages; and is authorized to pass additional laws, but these additional laws do not become operative in

a municipality unless and until they have been adopted by a majority vote of the electors of such municipality voting at an election. The schedule attached to the Constitution provided that all prior laws, not inconsistent with it, should continue in force, by virtue of which the laws prescribing the form or plan of municipal government continued in operation. Immediately after the Constitution was amended in 1912, the General Assembly, at its first session in 1913, enacted a statute providing several plans of municipal government to supplant the existing form in such municipalities as adopted one or another by a vote of the electors thereof. (103 Ohio Laws, 767.) The General Assembly expressly recited that this legislation was in accordance with Section 2 of Article XVIII of the Constitution. This legislation was placed in Part 1, Title XII of the General Code, where the provisions for police relief and firemen's pension fund then were and still are. It seems that the General Assembly considered the existing laws as the "general laws" referred to in Section 2, Article XVIII, and that it was enacting "additional laws" contemplated by that section of the Constitution. It is seen from this legislation enacted immediately after Article XVIII of the Constitution was adopted that the General Assembly made no attempt to impose its will upon the municipalities as to their form of government or to restrict their power to choose their own form under the "home rule" amendment.

From these sections, it is manifest that while the Legislature must enact general laws providing for the method of incorporating municipalities, the constitutional power to determine the form of government, what officers they shall have, what functions of local government shall be performed by each officer, what officers shall be elected and what appointed, and other details of form and instrumentalities, rests with the electors of the municipality, free of any control by the

Legislature (28 Ohio Jurisprudence, 229, Section 120), except in those instances in which the Constitution confers express power upon the Legislature as to specific subjects, such as in the creation of courts inferior to the Court of Appeals. This was decided in *Fitzgerald* v. *City of Cleveland*, 88 Ohio St., 338, 103 N. E., 512; *Billings* v. *Cleveland Ry. Co.*, 92 Ohio St., 478, 111 N. E., 155; *Ide* v. *State*, 95 Ohio St., 224, 116 N. E., 450; *State, ex rel. Lentz,* v. *Edwards*, 90 Ohio St., 305, 107 N. E., 768; and *State, ex rel. Stanley*, v. *Bernon*, 127 Ohio St., 204, 187 N. E., 733; *Underwood* v. *Isham, Judge*, 61 Ohio App., 129, 22 N. E. (2d), 468, and numerous other cases relating to the form, method, and instrumentalities of municipal government. We know of no case casting any doubt upon this construction of these constitutional provisions.

We conclude that the provisions of Part 1, Title XII, General Code, were and are intended solely for operation in those municipalities that have not exercised their constitutional power to establish their own framework of municipal government, and that the city of Cincinnati had constitutional power to determine for itself what officers should administer its police relief and pension funds.

The actions for writs of mandamus will, therefore, be dismissed.

The remaining question is: To what extent, if at all, the Legislature has attempted to impose mandatory rules for the administration of these funds, and to what extent these municipal officers are bound thereby, if such an attempt has been made? This question is raised by the action for an injunction to require the abandonment of the "retirement system" established by the city ordinances insofar as it relates to the police and fire departments. We have already considered the constitutional provisions relating to the form of municipal government and reached the conclusion that the General Assembly's authority is subor-

dinate to the constitutional power of the people of the municipality to choose their own form. In reaching a conclusion in the injunction action, we will consider specifically the extent of the power of the General Assembly over the power of the municipalities to tax and incur debts. As the claimed effect of operating under Section 4600 *et seq.,* General Code, is to create substantial rights, they will also be discussed here.

It should be observed that notwithstanding the various amendments to Chapter 1 of subdivision VI of Title XII of the statutes (Section 4600 *et seq.,* General Code) there clearly has never been and is not now any attempt by the Legislature to require a municipality to establish a relief fund for the benefit of the members of its police department, unless this results, *ipso facto,* from the mere exercise of the statutory option to establish a relief fund and make the levy to create and maintain it, with the result that the system thereby became fastened upon the municipality, so long as the state Legislature wills that it should continue.

It is conceivable that there could be a police relief law, the provisions of which would become implied terms of the contract between the policeman and the city, so as to create a vested right in the policeman to have the pension system continued for his benefit. It is unnecessary for us to consider whether the statutes with which we are here concerned are of that character, as the city has made provision for the continuance of the fund and its administration by the municipal board so that the members of the department and those receiving benefits from the fund at the time of the establishment of the "retirement system" will receive the same benefits exactly as though the fund were still administered in accordance with the terms of the statute.

We believe it too clear for argument that the voluntary establishment of a police relief fund does not

bind the city to continue it in perpetuity for the benefit of members of the police department that it employs or appoints after it has concluded to discontinue the system, and of which such members have knowledge at the time of their appointment.

But it is said the holding in *Thompson* v. *City of Marion*, 134 Ohio St., 122, 16 N. E. (2d), 208, is to the contrary. We do not so understand that case. The plaintiffs in the cases reported under that caption had been members of the police and fire departments and their actions sought ''to prevent the abandonment of the system of police and firemen pensions and particularly to enjoin the transfer of the funds theretofore created for such purpose to other and different purposes and uses.'' The court refrained from determining whether the plaintiffs had a vested interest and placed its decision that the ordinance was a nullity on the sole ground that after a city had declared the necessity for the establishment and maintenance of a police relief fund and made the statute fully operative within the city it could ''not thereafter render entirely inoperative as to such city the provisions of the statute governing the creation and administration of such relief fund and cause the funds raised for such purpose by taxation pursuant to law to be transferred and expended for other and different uses and purposes.''

No such complete abandonment and no diversion of the existing fund for other purposes has been attempted by the city of Cincinnati.

So we conclude that it is clear that the injunction should be denied insofar as it seeks to compel the resumption of the police relief and pension fund under the present statutory provisions.

The only material distinction between the statutes relating to firemen and those relating to policemen is that by Section 4600, General Code, as amended in 1939 (118 Ohio Laws, ——), the Legislature enacted

that in municipalities having a fire department supported in whole or in part at public expense and employing two or more full time regular members "there shall be established and maintained a firemen's relief and pension fund" administered by a board selected as prescribed in the statute. It should be observed, however, that this provision was placed in Part 1, Title XII, General Code, which, in our opinion, in and of itself made its operation conditional upon the municipality to exercise its constitutional power to choose its own plan of municipal government.

When we lay on one side the provisions of these statutes relating to the boards to administer these funds (which we have found are not binding upon a municipality) the only other power of municipal government attempted to be controlled by the Legislature is the taxing power.

Assuming that these legislative provisions are mandatory in terms, which we do not find, the question remains whether the Constitution has conferred any such power upon the Legislature.

Clearly, Section 3 of Article XVIII of the Constitution, confers no such power upon the Legislature. That section is limited by its terms to the exercise by municipalities of the police power and limits municipal power in that respect alone to such as are not in conflict with general laws. The Constitution framers of 1912 were entirely familiar with the three great divisions of governmental power—police power, power of taxation, and eminent domain—and by Section 3, Article XVIII, gave the Legislature control over one only of those powers—the police power—by the enactment of general laws. The section has no reference to the taxing power.

The Constitution does by Section 6 of Article XIII and Section 13 of Article XVIII give to the Legislature certain power over municipal taxation and, by their terms, the validity of this legislation purporting to re-

quire the municipality to levy three-tenths of a mill for this purpose must be tested.

Section 6 of Article XIII confers power upon the General Assembly to provide by general laws for the incorporation of municipalities and *"restrict* their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power." (Italics ours.)

And by Section 13 of Article XVIII, it is provided in part that "Laws may be passed to *limit* the power of municipalities to levy taxes and incur debts for local purposes," and to provide for inspection and supervision so that the limitations imposed will not be exceeded. (Italics ours.)

Now the power of taxation as well as the police power is included in the power of local self-government conferred upon municipalities by Sections 3 and 7 of Article XVIII. 28 Ohio Jurisprudence, 247; *State, ex rel. City of Toledo,* v. *Cooper, County Auditor,* 97 Ohio St., 86, 119 N. E., 253. But those sections contain no such limitation on the taxing power as they do on the police power of the municipality. The power over taxation and debt creation is found in the other sections (Section 6 of Article XIII and Section 13 of Article XVIII) cited. And a reading of those sections makes it apparent that the power of the General Assembly in that regard is to limit or restrict the exercise of the taxing power and that there is no power conferred upon it to directly compel a municipality to levy a tax, although this may result indirectly from the duty to comply with general laws passed by the Legislature in the exercise of the police power.

Of course, in addition to this express power to limit municipal taxation, the state may, by preempting a field of taxation, exclude municipalities from that field (*City of Cincinnati* v. *American T. & T. Co.,* 112 Ohio St., 493, 147 N. E., 806). But neither their implied

power nor the express power gives to the Legislature jurisdiction to compel the levy of a tax by a municipality for local purposes.

Every reasonable presumption in favor of the constitutionality of a statute passed by the General Assembly must be indulged in by the court. The fact that this amendment was placed in Part 1, Title XII, General Code, leads us to the conclusion that it was enacted under the power conferred by Section 2 of Article XVIII to enact "additional laws," and subject to the limitation imposed by that section that such "additional laws" should become operative in a municipality only upon its consent thereto.

For these reasons, we are of the opinion that the plaintiff has no cause of action for injunctive relief and that final judgments should be rendered for the defendants in all three cases.

*Judgments reversed.*

HAMILTON, P. J., MATTHEWS and ROSS, JJ., concur.