**STATE ex FITZGERALD v LEASURE et**

Ohio Appeals, 2nd Dist, Franklin Co.

No. 2985.   Decided July 22, 1939

E. H. Turner and W. B. Turner, Dayton, for relator.

Thos. J. Herbert, Cleveland, Attorney General; John Walsh, Columbus, and Herbert K. Ames, Columbus, Asst. Attorneys General, for respondent.

**OPINION**

By GEIGER, J.

The relator, Nell Fitzgerald, states in her petition that she is the duly appointed and acting manager of the Middletown branch office of the Ohio State Employment Service; that the defendants are the acting members of the Unemployment Compensation Commission which controls the operation of the division of employment service, and that W. T. Doe is a director; that there has been established in the city of Middletown an office of the state employment service under the direct supervision of the manager thereof.

Relator avers that she was duly appointed to the position of manager of said Middletown office eight years ago, from the state Civil Service eligible list; that she has continuously held said position under the classified service of the state of Ohio for eight years during which time she has rendered satisfactory service. She alleges that no charges have been filed against her pursuant to the Civil Service Act, but

that on January 31, 1938, she was arbitrarily laid off and discharged from her position as manager by W. T. Doe, Director, wrongfully and in violation of the provisions of law, and that Doe acted under the director and instruction of the defendants.

She alleges that she was paid a salary up to and including February 15, 1938, which salary the defendants are now wrongfully withholding from her and that they are wrongfully preventing her from performing her duties; that she is entitled to receive the salary so wrongfully withheld and to be paid at $104.18 semi-monthly from the date of her discharge; she alleges that a new manager of said Middletown office has succeeded her and is now performing her duties; that she is ready, willing and able to discharge them but has been wrongfully prevented; that she · notified the defendants and has demanded her restoration and payment, but that defendants refuse to restore her or to perform their duties, and that she has no adequate remedy at law.

Relator prays for a writ of mandamus, requiring respondents to reinstate her in her position under the classified Civil Service and pay her her salary and other emoluments.

To this petition an answer was filed by Herbert S. Duffy, Attorney General, on behalf of the respondents, who admit their appointment and the formal allegations of the petition. They admit other allegations as to the establishment of the employment service in the city of Middletown; that previous to February 15, 1935, the relator had been engaged as manager as she claims, and that she was under the classified service. They further admit that no charges have been filed against her, and further allege, "further answering the respondents say that the position which relator formerly held as manager of the Middletown branch office, Ohio State Employment Service, was abolished for economy purposes." Other allegations are denied.

The relator in her reply denies that the position of manager of the Middletown branch office was abolished for economy purposes and avers that said

office in fact has been continued and the duties thereof are now being performed by persons other than the relator.

We shall endeavor to confine our decision in this case narrowly to the facts without going into too extensive a discussion of cases.

Relator avers her appointment as manager of the Middletown office from the Civil Service list, and further avers that on January 31, 1938, she was arbitrarily laid off and discharged from her position.

The respondent says that the position which the relator formerly held as manager was abolished for economy purposes.

At the outset we wish to disclaim any intention of interfering with the operation of the duly constituted authorities of this activity of the state. Officers in charge of the Welfare Department where the laws have recently been changed must have some proper leeway in the management and in the personnel, without unreasonable restrictions or supervision. However, such officers are required to observe the statutes of Ohio.

In cases of reduction or lay-off the appointing authority shall furnish the employee with a copy of the order of lay-off and his reasons for the same. Any person holding an office who has been separated from the service without delinquency or misconduct, may be reinstated within one year from the date of such separation in the same or similar office or position, and whenever any position is abolished the person holding such office or position shall be placed by the Commission at the head of an appropriate eligible list to be certified to an appointing officer as in the case of original appointments.

In the case at bar there was no claim that the relator was in any way deficient in the services she rendered nor that she had violated any laws laid down by the statute which would be grounds for her removal.

The answer simply states that the position was abolished  This brings to our attention two issues of fact: first, was the position abolished? and second,

if it was abolished was it abolished for the reasons given in the answer, to-wit, for economy purposes?

Taking up the question as to whether or not the position was abolished, we find first, a communication from the Commission under date of January 13, 1938, addressed to Miss Fitzgerald at Marion, (properly Middletown) Ohio, to the effect that the Division came under the jurisdiction of the Unemployment Compensation Commission on January 1, 1938.

"We are very happy to advise that you are presently being continued in your position under the direction and capable leadership of Mr. W. T. Doe." Relator's Ex. 57.

Thereafter, on February 18, 1938, the Commission passed a resolution purporting to abolish the position of Manager of the Middletown office and to consolidate that office with that of the manager at Hamilton, Ohio. The record of proceedings of the Commission indicates that on January 13th, in a full session, upon the recommendation of W. T. Doe, Director of the Division of Employment, the position of Manager of the office at Middletown was abolished.

"The reason for the same is in order to consolidate the Middletown and Hamilton offices under one management for more effective and efficient operation";

that the director Doe be instructed to notify Miss Fitzgerald that her position has been abolished as of February 15th. She was later notified that in order to avoid a clash of authority with her successor W. A. Betscher, the manager at Hamilton, she should vacate the office by the first of February, 1938. She thereupon left the office under protest and Betscher took full charge. The record is replete with many communications to and from Betscher in which he has designated himself and been designated by his superiors, as manager and acting manager.

Someone in authority printed cards bearing the inscription:

"OHIO STATE EMPLOYMENT
SERVICE
"Affiliated with United States
Employment Service
"Walter A. Betscher,
"Manager
"Civic Association Building,
"Middletown, Ohio."
Relator's Exhibit 46
Relator's Exhibit 53

These cards were in use by Betscher and circulated where occasion required. Betscher continued for a year to perform at Middletown substantially the same service that had been performed by the relator. This he did in connection with similar service at Hamilton.

After the year had expired from the date of Miss Fitzgerald's dismissal a gentleman by the name of Johnson was appointed as manager at Middletown and is now occupying that position.

When Mr. Doe was inquired of by a group of Middletown executives and labor representatives as to why the office was abolished he gave in substance the reason that it was an easy way to discharge Miss Fitzgerald and avoided the embarrassment of filing charges against her.

There is evidence in the record of the complaint really made which was partly that in his judgment her age rendered her less efficient for the office requirements and also that she had been taking credits for employments in which she in fact only assisted. See depositions of various witnesses.

When we examine the expenses of the office, which were presumably the cause for the abolishing of her position, we find some slight dimunition, but not sufficient to indicate that the stated purpose of economy was very successfully followed.

The record is replete with testimony that indicates: first, that the office was not in fact abolished; second, that there was no such saving as would indicate there was a bona fide purpose to save money.

It is asserted that because the orig-

inal commission had added duties by reason of legislation that the position she formerly occupied is not now the same as it was when she was discharged. Whether or not this be true is of no consequence for the reason that our question relates to the time of her discharge and not to what may have happened subsequent thereto by legislative enactment. It can readily be conceived that an officer may be wrongfully discharged under the pretext of the abolition of his office and although the office was not then abolished, that subsequent legislative enactment may in fact abolish it.

We are also quite conscious of the fact that where an office is in good faith sought to be abolished there is a transitory period during which some employees may lose their positions and others continue, or even where some temporary appointment may be made in order to ultimately promote the abolition of the office. We would not wish to be understood as holding that in such an event the discharge of an incumbent would not be justified for bona fide reasons. But this does not appear to have been the purpose in this case.

The record in this case impresses us with the fact that it was not the purpose to abolish the office, but was primarily the purpose to abolish Miss Fitzgerald. That could not be accomplished in the manner pursued, but could only be done by the filing of proper charges with a right to be heard. W. T. Doe, Director, Ohio State Employment Service, repeatedly sought a successor to Miss Fitzgerald by conferences with Middletown citizens. The fact that it was not the legislative intent to create a new department of government on account of which old employees might be discharged is evidenced from the reading of §1345-15, GC, wherein it is stated that the employment service is transferred to the Commission as a Division thereof, and that the Commission was established to co-ordinate the division of employment service and the unemployment compensation di-
Respondents' Ex. E.

Sec. 1345-15 of the act providing for unemployment compensation provides:

"The employees of such employment offices and employment service of the state shall be transferred at said time to the jurisdiction of the Commission, and the status, classifications, grades, rates, and rights under the civil service laws of all such employees shall continue unchanged and unaffected by such transfer."

Sec. 1345-16 of the act provides:

"Each division shall be a separate administrative unit with respect to personnel, budget and duties, except in so far as the commission may find that such separation is impracticable."

We do not find any evidence that there is a separation such as is provided by §1345-16 in the city of Middletown.

There are other evidences that neither the legislature nor the Commission intended that the new burdens imposed upon the manager of the Commission would so change the character of the service as to constitute an abandonment of the office and a creation of a new office.

The writ requiring the respondent to restore the relator is allowed.

## CAN THE WRIT BE USED TO COMPEL PAYMENT?

The question is whether or not this court has authority to issue a writ of mandamus requiring the Department from whose services the relator was dismissed, to pay the salary which she has not drawn during the period that she was out of employment.

Sec. 12283, GC:

"Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station."

Sec. 12287, GC:

"The writ must not be issued in a case where there is a plain and adequate remedy in the ordinary course of the law."

It is apparent from these two sections that the use of the writ is circumscribed and is not available where law does not specially enjoin on the persons the act sought to be accomplished. Neither can it be issued in the case where there is a plain and adequate remedy in the ordinary course of law. If either of these conditions prevail the writ may not be issued.

In the case of **Williams v State, ex rel, 127 Oh St 398,** it is held:

"Mandamus will not lie to enforce the payment of a claim unliquidated and indefinite in amount. Whatever view may be entertained by this court with reference to the right of the relator to recover in an action at law compensation or salary, or any portion thereof, for the period of exclusion from office * * * we now hold that such question can be considered only in an action at law."

It is claimed by counsel for relator that this decision does not apply to the present case, for the reason that it relates to an attempt to enforce the payment of a claim unliquidated and indefinite in amount.

In the case of **State ex White v City of Cleveland, 132 Oh St 111,** it is held:

"1. A writ of mandamus will not be issued except to command the performance of a specific duty enjoined by law; nor will it be issued where there is a plain and adequate remedy in the ordinary course of law.

2. Sec. 486-17a, GC, protects the tenure of an officer or employee in the classified service from removal from office or employment. The section does not enjoin upon the director of public safety any specific duty in respect to the deprivation or restoration of an employee's wages.

3. Where an employee has not been removed from his position but has been suspended from the payroll, a writ of mandamus will not be employed to replace him on the payroll or to restore his wages during the period of his suspension."

The Court states on page 113:

"Sec. 486-17a, GC, protects the tenure of officers and employees in the classified service and pertains to their removal from employment or office. But no specific duty is thereby enjoined respecting the deprivation or restoration of emoluments pertaining to the office or employment. Mandamus could not, therefore, be employed for the purpose of restoration of the patrolman's wages."

In the recent case of **State ex rel v DeCorps, 134 Oh St 295, at page 300,** the Court states:

"Appellant's prayer that he be awarded the emoluments of his position during the period of his exclusion therefrom cannot be considered here."

Then follows the quotation above given from Williams v State.

Without going further into detail, we are of the opinion that the statutes as above quoted and the cases last cited are authority for the denial of the writ of mandamus to secure the payment of the omitted salary.

We do not understand that mandamus may be resorted to for that purpose.

In arriving at our conclusions we have considered the following cases in addition to those last above cited:

**State, ex rel v Witter, 114 Oh St 123;
State, ex rel v Witter, 110 Oh St 216.**

Judgment accordingly.

HORNBECK, PJ., concurs in Judgment.
BARNES, J., dissents except as to Syllabus 3.