THE STATE, EX REL. EDMUNDSON, *v.* BD. OF EDN. OF NORTHWESTERN LOCAL SCHOOL DIST., MEIGS COUNTY.

(No. 13618—Decided October 6, 1964.)

*Messrs. Halliday & Sheets,* for relator.

*Mr. Bernard V. Fultz,* prosecuting attorney, for respondent.

BACON, J.   Max Edmundson, the relator, seeks a writ of mandamus ordering the Board of Education of Northwestern Local School District to reinstate him as a school bus driver and school bus supervisor according to contracts the parties entered on May 27, 1963.

Briefly, his petition recites that he has a contract as a regular school bus driver for a period of two years dated May 27, 1963, with a salary as fixed by the board for such drivers,

and a contract of like date as school bus supervisor for a period of one year at $600 annually.

Further, that these contracts were made under the provisions of Section 3319.081, Revised Code, governing contracts for non-teaching employees, and that, although on October 16, 1963, the board adopted a regulation, viz:

"That any substitute bus driver having two accidents, or any regular bus driver having five accidents during his duties as bus driver, that cause police investigation, or which cause bus damage, passenger injury, or liability damage shall be dismissed."

On December 30, 1963, relator was without cause, and without violation of said regulation, discharged as a regular bus driver and school bus supervisor.

Further, that commencing with the first opportunity in the year 1964 and ever after the relator has offered his services as such bus driver and school bus supervisor, but the board has refused such offer and prevented relator from performing his duties under the said contracts.

Upon relating that the board had failed to pay him the compensation due him under his contracts, the relator averred that he had no plain and adequate remedy at law.

The board filed a demurrer to the petition the same day fixed for the respondent to appear and show why the writ should not be allowed, which was overruled.

Evidence adduced substantially proved the allegations of relator's petition, plus these additional facts:

Relator, 57 years of age, on October 28, 1963, driver of Bus 16 ever since it has been acquired by the board, was driving east from Salem Center on Route 124 about 35 miles per hour when the bus left the road on Huffman Hill, the front end striking against the embankment 17 feet from left edge of the highway and "bridging" a small ravine.

Relator testified the bus would not respond to steering controls as he attempted to negotiate the slight curves in the roadway on the hill. The bus was nearly full of children when this occurred about 8:30 a. m., but no one suffered any injuries.

On cross-examination it was adduced that relator and his wife had made a trip of about 350 miles to Tennessee on the preceding Saturday, that about 4:30 p. m. Sunday the week-end

vacationers commenced the return trip as rear seat passengers, arriving at relator's home about 3 a. m. Relator arose at 6:45 a. m. to commence his driving duties.

Relator testified he slept much of the time in the back seat, but it was not likely he was fresh and alert as he normally was when commencing his duties.

Relator stated he had driven for the board for 17 years without an accident, and that on at least four occasions he had driven the senior class on trips to Cincinnati, returning in the early hours of the morning, when he would still be called upon to resume his regular duties without the usual time for night time repose.

Following the October 28th accident relator was not immediately suspended or discharged but was continued in service daily and on occasion transported high school athletic teams.

Only one bus passenger testified, a 14-year-old, who said she travelled to school on relator's school bus for nine years. Relator never had any accident that she could remember in that time, but on the morning of October 28th she thought that relator's head nodded on at least one occasion before the accident on Huffman Hill. Near Hampton Hollow relator's head nodded and the bus started to leave the road, someone shouted, relator's head came up, the bus started jerking, but was brought under control. The witness said she occupied the seat immediately behind relator.

The state highway patrolman, who went to the scene of the Huffman Hill accident testified. His investigation was inconclusive. Apparently he accepted relator's explanation that a fault in the steering apparatus had occurred.

The patrolman did indicate that later he was skeptical of relator's explanation as to faulty steering apparatus. Following conversations with pupil passengers he was inclined to believe relator had ''dozed'' when he ran off the roadway. However, his investigation was not ''followed up.'' No charges were filed against relator. Only the testimony of the 14-year-old passenger was offered by the board on the ''dozing'' point.

Charles Carson, who repaired Bus 16, testified. He installed a new axle, new front springs, new spindle, new king pin, new tie rod. The frame had been sprung but pulled back when a new cross member was added. It was his opinion the

damage to the steering unit was caused when the bus hit the embankment.

Theron Morris, present driver of Bus 16 testified. He added little except that Bus 16 is a 1962 International with power steering.

The final witness was Orin M. Smith, executive of Northwestern Local School District. He went to the accident scene on October 28th, but added little additional information. He has known relator for eleven years. Never knew him to be involved in an accident.

The problems posed are vexing. The court has examined the statutes and the authorities as an aid in their solution. Many of the statutes appear improvident. The authorities offer little help. Nevertheless, a decision is required.

Section 2731.01, Revised Code, defines mandamus thus:

"Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station."

And, under the provisions of Section 2731.05, Revised Code, the writ of mandamus must not issue when there is a plain and adequate remedy in the ordinary course of law.

First, then it must be determined whether there was any duty enjoined by law upon the board in regard to relator's status.

The act "For the reorganization and maintenance of Common Schools" 70 Ohio Laws 195, passed May 1, 1873, was one of the earlier provisions for employment by school boards of employees other than teachers. There were amendments from time to time, until Section 7690, General Code of Ohio provided:

"Each city, village or rural board of education * * * may elect, to serve under proper rules and regulations, a superintendent or principal of schools and other employees * * *,"

And Section 7701, General Code of Ohio, provided:

"Each board may dismiss any appointee or teacher for inefficiency, neglect of duty, immorality, or improper conduct. No teacher shall be dismissed by any board unless the charges are first reduced to writing, and an opportunity be given for defense before the board, or a committee thereof, and a majority

of the full membership of the board vote upon roll call in favor of such dismisal.''

Apparently Section 7701 was never specifically repealed, except as subsequent enactments upon the same subject must be construed in connection therewith.

The first comprehensive school law appears to be that enacted May 3, 1873. It was an excellent one and with amendments from time to time survived for many decades. Section 53, 70 Ohio Laws 195, empowered the board of education of each school district:

''to appoint a superintendent * * * teachers, janitors and other employees, and fix their salaries or pay, * * *''

And boards apparently had unlimited power

''to dismiss any appointee for inefficiency, neglect of duty, immorality or improper conduct * * *''

It was not too long before the teacher's lobbies persuaded the General Assembly to pull the board's teeth. See Section 7701, General Code, hereinbefore set forth. Today, for example, Section 3319.16, Revised Code, provides:

''The contract of a teacher may not be terminated except for *gross* inefficiency or immorality; for *willful* and *persistent* violations of reasonable regulations of the board * * *.'' (Emphasis added.)

And procedure is provided by statute for filing of written charges, a complete judicial type hearing, including a stenographic record with a copy to the teacher at the expense of the board. The board's clerk is granted the power of subpoena! And an appeal to the Court of Common Pleas is provided.

Other employees are not so fortunate. Yet, here, too, the General Assembly has modified the board's powers. Section 3319.081, Revised Code, covers contracts for nonteaching employees.

''In all school districts * * * the following employment contract system shall control for employees whose contracts of employment are not otherwise provided by law:

''(A) Employees, with at least one year of service in the school district, provided their employment is continued, shall be employed for a period of not less than one year nor more that five years.

"(B) After the termination of the contract provided in division (A), and thereafter provided their employment is continued, the contract shall be for not less than two years nor more than five years.

"(C) The contracts as provided for in this section may be terminated by a majority vote of the board of education. Such contracts may be terminated only for violation of regulations as set forth by the board of education. * * *"

(Query aside: Can boards of educations no longer dismiss nonteaching employees for inefficiency, immorality, improper conduct? Or, as the statute seems to imply, are boards limited in fact to "only for violations of regulations as set forth by the board of education?" The facts of this case do not require an answer here.)

This court is not convinced that it has been in the public interest to so hedge the powers of school boards. It is not the court's prerogative, however, to question the wisdom of legislation.

Definitely, by law the General Assembly has enjoined school boards from terminating the contracts of nonteaching employees save for violation of the board's regulations.

In the instant case it has not been shown that plaintiff violated any of the board's regulations. In fact, he was well within the unfortunate regulation of northwestern school board of October 16, 1963, which the board should negate at the first opportunity.

If there was any offense by relator on the 28th day of October, 1963, it was certainly condoned when he was not suspended, and in fact continued in service without interruption until he was informed by the board on December 31st, that he was through.

If there had been evidence that relator had been involved in three or four collisions he had caused, this court would examine the reasonableness of the board's October 16th regulation. However, here there was evidence of only one occurrence, for which the cause was never satisfactorily fixed.

It would appear then that the school board has made an order which the board is enjoined from making under the provisions of Section 3319.081, Revised Code.

It appearing mandamus is the proper remedy to restore

relator to his status under the contract unlawfully terminated — the question arises, is the court authorized to make any order concerning relator's compensation?

Under a long line of authorities commencing with *Williams v. State, ex rel. Gribben,* 127 Ohio St. 398, it would seem not! There, in a *per curiam* opinion, the Ohio Supreme Court undertook to reverse its holding in *City of Cleveland v. Luttner,* 92 Ohio St. 493. Later, in the syllabus of *State, ex rel. Gordon,* v. *Barthalow,* 150 Ohio St. 499, the *Luttner case* is specifically overruled.

The unanimous court in the *Williams case, supra,* said mandamus did not lie upon the question of compensation because relator's claims for pay during time they were wrongfully ousted from their civil service positions were unliquidated and indefinite in amount. The reasoning in the *Barthalow case, supra,* was that a public officer or public employee holds his position neither by grant nor contract, thereby having no vested interest or private right of property in his office or employment.

The *Williams case* appears to be mechanically followed in *State, ex rel. Curtis,* v. *DeCorps,* 134 Ohio St. 295 (pumpman restored to his position at the waterworks, but writ denied insofar as compensation is concerned). See, also, *State, ex rel. Conway,* v. *Taylor,* 136 Ohio St. 174. In *State, ex rel. Giovanello,* v. *Village of Lowellville,* 139 Ohio St. 219, the chief of a volunteer fire department was reinstated, but a writ refused as concerned his salary. And see *State, ex rel. Wilcox,* v. *Woldman,* 157 Ohio St. 265.

Can we find a clue to the whole matter in Judge Zimmerman's assertion in the *Woldman case?* In 157 Ohio St., at page 273: "It may be that an injustice will result * * * but, under the several former decisions of this court denying to a wrongfully removed public employee the remedy of mandamus as a means * * * of recovering compensation * * *. Writ denied,"—and Judge Stewart's dissent, concluding:

"She has no adequate remedy in the ordinary course of the law for recovery of the back salary due her, since the state is not amenable to an ordinary action for such recovery."

And making a point ignored all too often:

"Since she had no employment or compensation, the amount of her back salary is fixed and certain."

The *Woldman case* is similar to the instant case in that respect, the relator, Edmundson, having no other employment save that which he has always held during his tenure as a school bus driver for the past several years—part time salesman in an electrical appliance store. It would appear likely the school board in fixing compensation for its bus drivers takes into consideration the many hours during the day drivers are not required to be on the business of the school district.

In other words in southern Ohio rural areas, the drivers' services being only required in early morning and in the afternoon when pupils are dismissed for the day, "moonlighting" in the daytime (farming, auto repairing, operating service stations, etc.) is customary.

Judge Zimmerman recited the principle in the *Woldman case, supra,* quite succinctly, at 157 Ohio St. 268:

"Although courts in other jurisdictions have taken a different view, this court has consistently held that the extraordinary writ of mandamus is not available to a public employee as a means, directly or indirectly, to recover pay or salary during the time he was wrongfully excluded from his position. *Williams, Dir.,* v. *State ex rel. Gribben,* 127 Ohio St. 398, 188 N. E. 654; *State, ex rel. White,* v. *City of Cleveland,* 132 Ohio St. 111, 5 N. E. 2d 331; *State, ex rel. Curtis,* v. *DeCorps, Dir.,* 134 Ohio St. 295, 16 N. E. 2d 459; *State, ex rel. Conway,* v. *Taylor, Dir.,* 136 Ohio St. 174, 24 N. E. 2d 591; *State, ex rel. Greenlun,* v. *Beightler, Dir.,* 64 Ohio App. 295, 28 N. E. 2d 935, affirmed, 137 Ohio St. 377, 30 N. E. 2d 554; *State, ex rel. Ford,* v. *City of Toledo,* 137 Ohio St. 385, 30 N. E. 2d 553."

The latest appears to be that of *State, ex rel. Barborak,* v. *Hunston,* 173 Ohio St. 295.

Many opinions of the appellate courts follow the principle enunciated in the *Williams case.*

In *State, ex rel. Greenlun,* v. *Beightler,* 64 Ohio App. 295, affirmed 137 Ohio St. 377, the trial court by mandamus ordered reinstatement of a civil service employee and payment of back salary. The court of appeals affirmed reinstatement but reluctantly reversed the writ insofar as it directed back pay.

The appellate court in *State, ex rel. Kohr,* v. *Hooker,* 106 Ohio App. 1, arrived at a like result in the case of a teacher discharged under the Teacher's Tenure Act. And although a cafe-

teria clerk was reinstated in *State, ex rel. Flittner,* v. *Baldwin,* 108 Ohio App. 445, she also was denied a writ for back pay.

Yes, the decisions are many. *State, ex rel. Allen,* v. *Wahl,* 23 Ohio Law Abs. 416. *State, ex rel. Fitzgerald,* v. *Leasure,* 30 Ohio Law Abs. 252. *State, ex rel. Kendrick,* v. *Thormyer,* 88 Ohio Law Abs. 17.

The harsh *Williams'* rule should be reviewed, perhaps limited to cases "on all fours." Why must the phrase "It may be that an injustice will result, but . . ."—or the word "reluctantly"—be included in the court's opinion?

Certainly legal decisions which expound sound law in conformity to justice are not outmoded by the passage of time. An example is that of Chief Justice Thurman in *Case* v. *Wresler,* 4 Ohio St. 561.

There the plaintiff taught for three months under employment by a township school board. The board had assumed the duties of the directors of a subdistrict, the latter allegedly neglecting to discharge their duties. The local directors notified the treasurer not to pay plaintiff's salary, threatening suit if he did so.

The learned justice opined that even though it was by no means certain the board was justified in superseding the directors, the plaintiff having been hired by a board exercising de facto powers of the directors without any objection made known to the plaintiff, he was entitled to payment and, "he ought not to be turned around to sue the individuals composing the board." Peremptory mandamus was awarded. (an aside: teachers today might compare their pay! In 1855 Mr. Case received $35.69 for three months service.)

Granted that the *Case case* did not involve back pay or wrongful exclusion from office or public position, yet it was determined that plaintiff did not have an adequate remedy at law. And after all, isn't that what we are concerned about in mandamus?

With excellent reasoning, Judge Kohler of the Summit County Common Pleas Court in *State, ex rel. Schnee,* v. *Board of Education of Cuyahoga Falls,* 3 N. P. 236, 4 O. D. (N. P.) 329, relies upon the *Case case.*

The Falls school board failed to act in appointing a superintendent. Under the statute providing for such contingency the

county commissioners appointed one. Judge Kohler granted the appointee a writ of mandamus for his salary, and made some very good points from the opinion in *State, ex rel. Mix,* v. *City of Cleveland,* 10 Dec. Rep. 571, 22 W. L. B. 113, quoting Judge Stone:

"On the other proposition, as to whether mandamus is the appropriate remedy, very little need be said. I have no doubt that it is an entirely appropriate remedy under the circumstances. It would be far from an adequate remedy, that every month when the salary became due, a large number of claimants, each of them, must have his suit at law for the recovery of his salary, and still to perform services with the likelihood of being without such compensation for months, and perhaps years, awaiting the result of decisions, either in this or higher courts. It would be ridiculous and absurd to hold that these claimants must be remitted to any such remedy as that; especially when the employment and services are admitted, and it being only a question of method of payment. It would be neither appropriate nor adequate.

"We think the writ of mandamus is the appropriate remedy where an officer refuses to draw a warrant when it is clearly his legal duty so to do."

This court finds that the doctrine of the *Williams case* is not applicable. First, the Code has been amended to require employment contracts for nonteaching employees since that decision was made. Second, surely as contracting parties school boards must meet the obligations they create as fully as any of us. Third, school boards cannot fluff off their legal obligation to compensate one they have wrongfully discharged with the feeble excuse they have paid his compensation to one they have procured to usurp the position. Fourth, the evidence discloses that relator's damages for the wrongful breach of his contract are definite and certain—he having had no other employment other than that he enjoyed during his tenure as a bus driver.

Finally, mandamus lies in the instant case because relator has no adequate remedy at law. Judge Stone in *State, ex rel. Mix,* v. *City of Cleveland, supra,* stroked a responsive chord when he said, "as to whether mandamus is the appropriate remedy, very little need be said," and went on to opine that it would be far from an adequate remedy to compel relator to

bring an action each month when his salary fell due, to be without income for months, perhaps years, awaiting the decision in this or higher courts.

That one has no adequate remedy at law is likewise the reason equitable remedies are appropriate. Thus it is asserted in 35 Ohio Jurisprudence 2d, page 242, "In this respect its (mandamus) issuance is governed largely by equitable principles."

One of the chief characteristics of a court of equity is an adequate power to afford full relief to all the parties before it. This principle is often expressed in the maxim, "equity delights to do justice, and not by halves."

On these principles then, this court concludes a peremptory writ of mandamus must issue restoring relator to his status under the contracts the respondents entered with the relator, and directing payment to relator of the agreed compensation as provided by such contracts for the months January, February, March, April, May, June, July, August and September 1964.

*Judgment accordingly.*