HARDIN *v.* JOHNSON ET AL., PUBLIC UTILITIES COMMISSION OF OHIO, ET AL.

(No. 9871—Decided July 27, 1971.)

20

*Messrs. Lucas, Prendergast, Albright, Gibson, Brown & Newman* and *Mr. John A. Brown*, for relatrix.

*Mr. William J. Brown*, attorney general, and *Mr. F. Richard Heath*, for respondents.

TROOP, P. J. This is an original action in mandamus in which the relatrix seeks a writ directing the respondents to compensate her for the period of time she was illegally deprived of her employment with the state of Ohio, to reinstate her accumulated sick leave, and to credit her for the weeks of annual vacation to which she is entitled.

The facts of the case necessary to a consideration of the prayer of the petition are derived from allegations contained in the pleadings, petition and answer, a stipulation and affidavit filed June 29, 1971, and a supplemental stipulation filed July 9, 1971.

Relatrix, Marjorie J. Hardin, began work for the Public Utilities Commission on September 1, 1948, and worked until November 22, 1966, having been notified that her services were terminated. At the time of dismissal her position was Engineering Aide III. The dismissal was appealed and reached this Court of Appeals, which found the decision of the State Personnel Board of Review, dismissing her appeal, to be in error. The case was remanded and the board ordered the relatrix to be reinstated, which was done on June 1, 1969. Relatrix now seeks wages she would have earned had she not been dismissed, less what she did in fact earn during the interim of her employment with the Public Utilities Commission, and sick and vacation allowances.

Marjorie Hardin would have earned, from November 22, 1966, through May 31, 1969, the sum of $16,307.12 (stipulated). In the interval, she earned from F & R Lazarus Company, $8,007.03, and from Helena Rubenstein Cosmetic Company, $446.54, a total of $8,453.57. The net wages lost are $7,853.55.

This action is, at least, unusual in that relatrix resorts to an extraordinary proceeding in mandamus to recover lost wages and to secure certain credits, none of

which may be accomplished unless there is a clear legal duty imposed upon the Public Utilities Commission by law to do those things which the relatrix hopes to have this court require of that body. The matter of the use of a writ of mandamus to recover wages is noted first, since it seems to present the most problems.

Case law is voluminous in Ohio. Perhaps not more so than another state since it is expected that state governments are all confronted with that age-long battle between the spoils system and established civil service tenures. The conflict appears on the state level as well as in the local subdivisions, in all of which discharged and suspended employees seek to be reinstated in their jobs and recover lost wages.

Some rather early cases deserve to be noted. They encourage the use of mandamus to secure reinstatement, which idea persists, and some even permit the use of the action to recover wages. In reinstatement, mandamus is generally accepted as proper, assuming irregularity in removal. In one case, *State, ex rel. Desprez*, v. *Board of County Commrs. of Hancock County* (1933), 47 Ohio App. 1, the court held that an "employee was not required to appeal to civil service commission before applying for mandamus for reinstatement." An early case, *Toledo* v. *Osborn* (1926), 23 Ohio App. 62, decided by the Sixth District Court of Appeals, allowed the recovery of wages lost by the mandamus route. It is of special interest because the court held as follows:

"5. Payment of salary of employee in classified service, which is fixed and determined, may be compelled by mandamus to compel issuance of warrant."

Further, the trial court allowed a recovery based on evidence showing the amount lost in wages from which the amount earned in other employment was deducted in mitigation.

A bit of theory appears at page 67, as follows:

"* * * as the act of discharge was contrary to the provisions of that section [G. C. 486-17a], and therefore a nullity, it follows that the plaintiff was as much assistant

operator for the high-pressure pumping station after the attempt to discharge was made as before, and no cause of action for damages against the city of Toledo could arise out of the void act of its commissioner of water in dismissing the plaintiff.''

And then the court adds:

''The wrongful act committed was in keeping him out of his position and depriving him of the emoluments thereof, for which the remedy was one by way of mandamus.''

Another case recognized the use of the writ when wages were fixed and determined. In *Newcomerstown* v. *State, ex rel. Blatt* (1930), 36 Ohio App. 434, the court said:

''Where village marshal's salary was illegally reduced, mandamus to compel issuance of warrant for payment of salary fixed and determined was proper remedy.''

In *State, ex Kook*, v. *Civil Service Comm. of Wooster* (1934), 26 Ohio Law Abs. 36, the court followed the same route, holding that a municipal civil service commission ''may be compelled by mandamus to certify pay vouchers for a patrolman to the auditor for payment.''

Two decisions by the Supreme Court interrupted the trend permitting mandamus to be used to secure a restoration of job status and a recovery of wages. Those most significant decisions are in *Williams* v. *State, ex rel. Gribben* (1933), 127 Ohio St. 398, and *State, ex rel. White*, v. *Cleveland* (1936), 132 Ohio St. 111. Both decisions held that mandamus will not lie when payment of lost wages is sought. In *Williams*, the court held that ''Mandamus will not lie to enforce the payment of a claim unliquidated and indefinite in amount.'' *White* followed the same rule.

Both decisions noted an earlier decision in *Cleveland* v. *Luttner* (1915), 92 Ohio St. 493, in which the Supreme Court held that police officers could recover their salaries less amounts they otherwise earned. In *Williams*, the court said of *Luttner*, page 401, ''* * * we now hold that such question can be considered only in an action at law.''

It must be emphasized that *Luttner, Williams,* and *White,* deal with civil service employees of municipalities. Cities are subject to actions at law for the recovery of

money, sounding in contract and otherwise, which fact distinguishes these situations from those in which an improperly removed employee of the state who attempted to recover in an action at law would likely be confronted with the sovereign immunity doctrine, which may explain decisions by this Court of Appeals, then the Second District, in two cases. The first one, *State, ex Fitzgerald,* v. *Leasure* (1939), 30 Ohio Law Abs. 252, came shortly after *Williams.* The court relied upon and followed *Williams* in a suit instituted by a deposed branch manager in the Ohio State Employment Service. The court said the amount claimed as wages was unliquidated and indefinite.

A year later, *State, ex rel. Greenlun,* v. *Beightler* (1940), 64 Ohio App. 295, was decided. Again, a state employee was involved. The court was well aware of the decision of the Supreme Court in *Williams,* since it had been reversed. Two comments of the court are worthy of attention. The suffering employee urged that there was no remedy at law for improperly discharged state civil service employees. A comment of the court in response to that argument (page 299) reads as follows:

"* * * While this argument is persuasive, we are constrained to the view that if any correction of the pronouncement is required that it should be made by the Supreme Court and not by ours."

And then, at page 300, the court concludes:

"With some reluctance we are impelled to the conclusion that the judgment of the trial court must be reversed, so far as it directs payment of back salary."

Many cases followed the decision in *Williams* and *White,* a substantial number of which were concerned with the employees of cities. Examples of this group are *State, ex rel. Curtis,* v. *DeCorps* (1938), 134 Ohio St. 295; *State, ex rel. Giovanello,* v. *Lowellville* (1942), 139 Ohio St. 219; *State, ex rel. Lyons,* v. *Ness* (1942), 139 Ohio St. 309; and *State, ex rel. Welsh,* v. *Hoffman* (1941), 68 Ohio App. 171. Counties were involved in *State, ex rel. Cox,* v. *Hooper* (1940), 137 Ohio St. 222, and *State, ex rel. Barborak,* v. *Hunston* (1962), 173 Ohio St. 295. In *Cox,* the

court said, as it had in city cases, that "if litigation be unavoidable, a simple action at law will suffice."

A school board case, in which teacher tenure was the concern, produced a Court of Appeals decision ordering a writ to reinstate teachers. The court, in *State, ex rel. Kohr,* v. *Hooker* (1958), 106 Ohio App. 1, named the salary at which the teachers were to be reinstated, but also held that "No alternative writ as to payment of salary will be granted."

State employee cases would seem to present a different problem than that presented by local government units, although, one state employee case, *State, ex rel. Conway,* v. *Taylor* (1939), 136 Ohio St. 174, follows the rule from *Williams* and *White,* mentioning the customary "unliquidated and indefinite" objection regarding wages claimed. Such position avoids consideration of the distinguishing characteristic of the subdivision cases. In such, an action at law will lie, whereas a suit against the state of Ohio is precluded by the sovereign immunity doctrine which still remains the law in this state. (See this court's review in *Lehew* v. *Rhodes* (1970), 23 Ohio App. 2d 102.)

A classic Ohio case, the decision in which deals with a state employee who resorted to mandamus, is *State, ex rel. Wilcox,* v. *Woldman* (1952), 157 Ohio St. 264. The Civil Service Commission ordered that a suspension imposed by administrative authority be reduced, and further ordered "that she be reinstated to her former position and salary with full rights and benefits thereof." The Supreme Court held that there was no doubt about the authority of the commission to modify the departmental order, but added that it was restricted to affirmance, disaffirmance, or modification of that order. The attitude of the court toward the breadth of the order of the commission is reflected in the syllabus. The syllabus is as follows:

"1. A public employee, even though he holds his position under civil service, who is wrongfully excluded from his position and sues to recover compensation for the period of exclusion, is subject to have his claim reduced

by the amount he earned or in the exercise of due diligence could have earned in appropriate employment during the period of exclusion.

"2. A state employee in the classified civil service who is removed from his position by the authority who appointed him and on appeal to the state Civil Service Commission is reinstated to his position as of a date certain may not maintain an action in mandamus against such appointing authority to require him to prepare and issue a pay roll report covering back salary, where, on the record on which the cause is submitted for decision, the amount of compensation to which such reinstated employee may be justly entitled is doubtful."

At page 268, the court refers to the decision in *Williams, supra,* with approval it would appear as to a claim unliquidated and indefinite in amount. The court continues, and, at page 269, concedes "for the purposes of discussion" that the relatrix has "no adequate remedy at law" and might have, therefore, recourse to an action in mandamus. This move might have succeeded, the court seems to say, but for the answer of the respondent invoking the affirmative defense of "mitigation of damages." At this point the relatrix lost her case, it seems, because, said the court, she "has not seen fit to file a motion or a reply thereto and these uncontroverted allegations of the answer tend at least to make doubtful the amount which should be included in any pay roll report to which relatrix might be entitled." The rule of mitigation, says the court, at page 270, applies whether the theory of the relationship between public employees and the public they serve be regarded as one *ex contractu* or *ex lege.*

The concluding paragraph of the majority opinion should be noted (page 273). Relatrix "has not shown that a clear and unequivocal duty rests on respondent to prepare and issue a pay roll report as demanded," said the court, and then continues:

"There is nothing in the record to show that relatrix was not gainfully employed or that she did not have the

opportunity to secure suitable employment during the period of nearly a year and a half that she was excluded from her position with the state. * * *"

A part of the syllabus rule, paragraph 2, saying that mandamus will not lie, concludes as follows:

"* * * where, on the record on which the cause is submitted for decision, the amount of compensation to which such reinstated employee may be justly entitled is doubtful."

Justice Stewart dissented in *Woldman* and Chief Justice Weygandt concurred in the dissent. The dissent held that the relatrix was not obliged to seek employment, and since she had no employment her back salary was "fixed and certain." Further, the dissent held that relatrix had no adequate remedy at law for the recovery of her back salary "since the state is not amenable to an ordinary action for such recovery" (page 274).

Note a nisi prius case, from Meigs County, *State, ex rel. Edmundson,* v. *Bd. of Edn.* (1964), 2 Ohio Misc. 137, involving a bus driver and his board of education. The court reviewed many of the decisions noted here, including *Williams* and *Woldman* upon which its decision turns. The court suggests that the "harsh" *Williams* rule should be reviewed, and perhaps limited to cases "on all fours." The court proceeded to issue a writ directing that the bus driver be reinstated and that he be paid the agreed compensation.

Marjorie J. Hardin was ordered reinstated. The authority of the State Personnel Board of Review to make that order is comparable to that of the Civil Service Commission in the *Woldman* case. She was off work by reason of the improper order from November 22, 1966, through May 31, 1969. She is entitled to be compensated for that time. The amount due is a calculable sum and the information necessary to make the calculation is with the payroll officer of the Public Utilities Commission. There is nothing unliquidated or indefinite in that figure. Relatrix claims the amount to be $16,307.12. There is a clear legal duty to pay.

Relatrix in the instant case did not fail to respond to an affirmative defense of the respondents, for none was raised comparable to that in *Woldman*. Notwithstanding, the relatrix, by affidavit and deposition, supplied the amounts of her earnings in mitigation. There were two employers who paid her wages totaling $8,453.57. There is nothing unliquidated or indefinite about this amount. It is clearly ascertainable. Under decision law there is a clear legal duty to offset it against the amount claimed.

If there be any doubt, as the court in *Woldman* suggested there was, it is not because the relatrix did not meet the issue of mitigation. If there be doubt it pertains only to whether or not the relatrix diligently sought, not work, but more work, during the period of absence from the Public Utilities Commission. At best, such a question is speculative, even if a jury were to decide, and in the instant case becomes relatively insignificant when the employee, seeking her old position and therefore not a desirable prospect for other employment, reduced the amount owed to her by more than one-half.

As the dissent said in *Woldman*, there is no remedy at law available to this relatrix since the state is not amenable to suit. The clear legal duty of the Public Utilities Commission in this case should not be denied by the minuscule doubt which may persist, as comes from the suggestion of the court in *Woldman*.

To extend the ''harsh'' rule in *Williams*, and ignore the cold fact of sovereign immunity which forestalls recovery by a state employee, makes a mockery of R. C. 143.-27. The section provides that any suspension, or removal, of more than five days is appealable within ten days of the order from the appointing authority. A hearing must be held within 30 days. Assuming the board finds for the employee and orders reinstatement, there is a likely minimum of 30 days' pay for which the reinstated employee has no right of recovery if mandamus is not available.

As this court said in *Greenlun, supra,* it is ''with some reluctance'' that we conclude that a writ of mandamus should issue. But the court in *Woldman* had some reluc-

tance also, admitting, as it did, that "[i]t may be an injustice will result to relatrix herein." At least the statements of the court in *Woldman* suggest that the writ should issue in this case. We find this case to be distinguishable upon its facts from those cited herein denying mandamus. The fate of this decision is, of course, left to the Supreme Court in the hope that the facts distinguishing this case will invite review.

Two more points need attention, vacation pay and sick leave. R. C. 121.161 provides for vacation leave. In this case, the relatrix did not work all of the time she was away from her work with the Public Utilities Commission. If our decision goes unreversed she will be paid for the entire time, less the amount in mitigation. She was off work all the rest of the time and will be paid for it Additional reimbursement for vacations would make the state pay twice. A writ should not issue in this circumstance.

Sick leave is provided in R. C. 143.29. It provides that a civil service employee "shall be entitled for each completed eighty hours of service to sick leave of four and six-tenths hours with pay," and speaks directly as to the situation presented here, as follows:

"The previously accumulated sick leave of an employee who has been separated from the public service may be placed to his credit upon his re-employment in the public service * * *."

The amount is calculable and there is a clear legal duty to record the appropriate credit for the amount of sick leave accumulated at the time she was improperly removed. A writ will issue as to sick leave so accumulated.

*Judgment accordingly.*

HOLMES and WHITESIDE, JJ., concur.