THE STATE, EX REL. WELSH, APPELLEE, *v.* HOFFMAN ET AL., APPELLANTS.

THE STATE, EX REL. KELLY, APPELLEE, v. HOFFMAN ET AL., APPELLANTS.

(No. 2720—Decided January 21, 1941.)

*Mr. H. H. Wickham* and *Mr. C. J. Hoyt,* for appellees.

*Messrs. Lewis, Levin & Cronin,* for appellants.

By the Court. In separate actions in mandamus instituted in the Common Pleas Court of Mahoning county, Ohio, Raymond J. Welsh and Harry Kelly sought and obtained, in that court, respective writs restoring each of them to the position he formerly occupied as a deputy bailiff of the Municipal Court of the city of Youngstown. Each of the relators was appointed to such position in 1928, and had served continuously in that capacity until the first day of April 1940, when they were dismissed and discharged from their positions by the respondents, H. C. Hoffman and Robert B. Nevin, a majority of the judges of such court.

As a part of the judgments in the Common Pleas Court the finance director of the city of Youngstown, who was made a party to each action but who filed no answer or demurrer therein, was ordered to pay the relators their salaries immediately, from April 1, 1940.

Appeals on questions of law have been duly prosecuted to this court. The cases having been determined in the lower court upon identical facts, and the questions of law on appeal being likewise identical, such appeals will be disposed of together.

The Common Pleas Court was clearly in error in that part of its judgments wherein that court ordered the finance director to pay the relators their salaries from April 1, 1940, regardless of the fact that the finance director did not defend against the actions. See, *State, ex rel. Curtis,* v. *DeCorps, Dir. of Pub. Service,* 134 Ohio St., 295, 16 N. E. (2d), 459; *Williams, Dir. Dept. Pub. Safety,* v. *State, ex rel. Gribben,* 127 Ohio St., 398, at 401, 188 N. E., 654; *State, ex rel. White,* v. *City of Cleveland,* 132 Ohio St., 111, 5 N. E. (2d), 331; *State, ex rel. Greenlun,* v. *Beightler, Dir. of Highways,* 64 Ohio App., 295, 28 N. E. (2d), 935; *State, ex rel. Conway,* v. *Taylor, Dir. Dept. Liquor Control,* 136 Ohio St., 174, 24 N. E. (2d), 591; *State, ex rel. Fitzgerald,* v. *Leasure,* 30 Ohio Law Abs., 252.

The principle underlying these decisions is embodied in Section 12287, General Code, which specifically provides that a writ of mandamus "must not be issued in a case where there is a plain and adequate remedy in the ordinary course of the law."

See, also, *State, ex rel. Cox,* v. *Hooper, County Aud.,* 137 Ohio St., 222, 28 N. E. (2d), 598; *Kirk* v. *Bd. of Commrs. of Columbiana County,* 137 Ohio St., 348, 30 N. E. (2d), 334.

However, due to the final determination of this court with respect to the rights of relators to their former positions, it is apparent that relators are not entitled to the emoluments of those positions since their discharge therefrom on April 1, 1940, it being the conclusion of this court that such discharge was authorized by and not contrary to law.

As stated in relators' briefs, the serious question involved in these proceedings is whether deputy bailiffs in the Municipal Court of the city of Youngstown are entitled to the civil service status and tenure provided for those who come within the provisions relating to the classified civil service of the city. If they are, unquestionably they have the right, enforcible by the extraordinary remedy of mandamus, to be reinstated, for there was no attempt to justify their dismissal upon any grounds set forth in the provisions of the General Code relating to the removal of employees in the classified civil service of the city, which provisions and charter amendment have been adopted to replace those originally provided in the charter of the city.

It is the contention of the relators that the pleadings and proof show conclusively that their appointments were made in exact accordance with the statutes and municipal charter in effect at the time of their appointments, and that there has since been no legislation in any way affecting their status. It is pointed out that the answers of the respondents "admit that on the fifteenth day of October 1928," the relators, Harry Kelly

and Raymond J. Welsh, were "duly appointed to the office of deputy bailiff of the Municipal Court of the city of Youngstown and qualified and entered upon the duties thereof and continued to hold said position until April 1, 1940."

We agree that this admission in the answers of respondents disposes of the ground of error relating to the admission of claimed incompetent evidence as to the manner in which the relators were appointed to their positions. This evidence certainly cannot be prejudicial in the face of the admission that relators were duly appointed. The effect of the admissions and evidence upon this point is quite another matter, however.

The answer to the important legal question involved in these appeals depends upon whether the provisions of the city charter under which relators were appointed are effective to secure to relators their tenure of office. In other words, are they within the classified civil service of the city? The respondents claim that relators are not in such classified civil service and that their tenure of office is at the pleasure of the court. Section 10, Article XV of the Constitution of Ohio, adopted September 3, 1912, provides:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

The constitutional provision clearly indicates that the qualification and fitness of those in the service of the state, county or city may not in every instance be determined by competitive examination, and where this cannot be done such employees by force of the constitutional provision are not in the classified civil service.

The provision of the Constitution relating to civil service is not self-executing, but requires the passage

of laws to carry it into effective operation. We need not here determine whether the intention of the people of Ohio in adopting Section 10, Article XV, Constitution, was to limit to the law-making body of the state, that is, the Legislature, the exclusive right to pass laws providing for the effective operation of the provision. Although this seems to have been the clear intention of the people, yet the right of cities to adopt their own civil service laws, pursuant to the home-rule amendment to the Constitution, has frequently been upheld by the courts in specific instances.

We know of no instance, however, where, under the home-rule provisions of the Constitution, it has been held that a city by the adoption of a charter for its own local self-government may therein provide for the establishment of courts, although the language of Section 1, Article IV of the Constitution, is that ''courts inferior to the Courts of Appeals  *   *   *  may from time to time be established by law.''

In the case of *State, ex rel. Ramey,* v. *Davis et al., County Commrs.,* 119 Ohio St., 596, 165 N. E., 298, the Supreme Court, in the syllabus thereto, has definitely settled the following propositions:

''1. The sovereignty of the state in respect to its courts extends over all the state, including municipalities, whether governed by charter or general laws.

''2. None of the various provisions of Article XVIII of the Constitution of Ohio [being the home-rule section] are effective to abridge the sovereignty of the state over municipalities in respect to its courts.

''3. The Legislature has the exclusive power to create courts inferior to the Courts of Appeals.

''4. The power to create a court carries with it the power to define its jurisdiction and to provide for its maintenance.''

To the same effect see, also, the case of *State, ex rel. Cherrington, Pros. Atty.,* v. *Hutsinpiller,* 112 Ohio St., 468, 147 N. E., 647, the syllabus being as follows:

"The municipalities of this state have no power, by charter or otherwise, to create courts and *appoint* judges thereof, such exercise of power being in violation of Sections 1 and 10, Article IV of the Constitution of Ohio."

We think it can not successfully be claimed otherwise than that deputy bailiffs, as well as bailiffs, are essentially necessary to the maintenance of the court and that the exclusive power of the Legislature to create courts inferior to the Courts of Appeals, carries with it the exclusive power to provide for the appointment, status, tenure and discharge of deputy bailiffs of such courts as may be established by the Legislature pursuant to Section 1, Article IV of the Constitution, subject however to the limitation contained in the civil service amendment to the Constitution, that is, that such civil service laws as may be adopted shall not govern employees whose qualifications can not be ascertained by competitive examination, and this limitation must be kept in mind in determining the force and effect of all legislation upon the subject.

The Municipal Court of the city of Youngstown was created and exists by virtue of legislative acts designated as Sections 1579-127 to 1579-182, General Code of Ohio.

In passing upon the legal question here involved, three of these sections of the General Code, as well as the provisions of the city charter, must be considered, to wit:

Section 1579-161. "On the fourth Monday of November, 1913, and biennially thereafter, at one o'clock in the afternoon of said day, the respective judges of the said Municipal Court shall meet and select. First, one of their number as presiding judge. Second, a clerk, a chief deputy clerk, a bailiff, and a chief deputy bailiff of said Municipal Court, each respectively for a term of two years and each of whom shall be electors for such judges of the said Municipal Court, who shall

serve until their successor is appointed and qualified respectively. The manner and form of procedure of selecting said officers shall be determined by the said respective judges of said Municipal Court, and the manner and form of procedure may be modified from time to time as in the opinion of said respective judges may be desirable.

"The said officers, and any of [or] all additional deputies of said officers hereinafter provided for in this act, shall perform such duties and have such powers as hereinafter provided for in this act, and as now, or may hereafter be, provided by law of similar officers in the Court of Common Pleas, in so far as the same may be applicable, and as now, or may hereafter be, provided by law for police courts and justices of the peace. Additional deputies to the clerk and bailiff shall be designated as hereinafter provided for in this act.

"All appointive officers of the Municipal Court, excepting the clerk and bailiff, shall be in the classified civil service of the city of Youngstown, subject to the provisions of law and of any charter which may be hereafter adopted by said city, applying to and applicable to said civil service."

Section 1579-168. "On or before the first day of January, 1914, and, from time to time thereafter the judges of the Municipal Court shall select such number of deputy clerks, or deputy bailiffs as they may deem necessary to transact the business of the Municipal Court, who shall serve for such time or term as the judges of said court shall determine."

Section 1579-175. "A vacancy in the office of clerk, chief deputy clerk, bailiff, or chief deputy bailiff shall be filled by the judges of the Municipal Court for the unexpired term. Said judges shall have full power and authority to dismiss or discharge the clerk, chief deputy clerk, bailiff, chief deputy bailiff, or any appointee or officer other than a judge, provided for in

this act, for any cause, and appoint a successor, and their decision shall be final."

The original charter of the city of Youngstown specifically designated the positions which were in the unclassified service, and provided that "the classified service shall comprise all positions not specifically included in this charter in the unclassified service." It may be conceded that indirectly the position of deputy bailiff of the Municipal Court was placed by the charter within the classified service of the city, since the position of deputy bailiff was not one of those mentioned as being in the unclassified service.

Relators rely upon this language of the charter, which was specifically retained when the charter was later amended, and further rely upon the language contained in the last paragraph of Section 1579-161, General Code, a part of the Municipal Court Act, and it is ably argued that since it is admitted that these relators were duly appointed pursuant to the charter provision referred to above and pursuant to Section 1579-161, General Code, the tenure of their respective offices was secure against attack except by the filing of charges against them upon a ground or grounds and for reasons set forth in the provisions relating to employees in the classified service.

At first view it may appear that Section 1579-161 is irreconcilably in conflict with Section 1579-168 and Section 1579-175, General Code, the last two sections specifically granting to judges of the Municipal Court the right to appoint deputy bailiffs to "serve for such time or term as the judges shall determine" and to "dismiss or discharge" them "for any cause," and "their decision shall be final." The power thus conferred upon the judges would be inconsistent with the provisions of the Civil Service Act if such bailiffs are in the classified service, as is argued by relators from the language of the last clause of Section 1579-161, General Code. It is argued on behalf of respondents

that this clause of Section 1579-161, General Code, is specifically made subject to the provisions of law or charter applying and applicable to civil service, which brings into operation the constitutional limitation that civil service shall not apply to employees whose qualifications can not be ascertained by competitive examination, and the further limitation that courts inferior to the Courts of Appeals can only be established and their maintenance provided for by legislative enactment.

In this connection consideration must also be given to the fact that by Section 486-8, General Code, bailiffs of courts of record are placed in the unclassified service. This specific legislative provision must take precedence over any inconsistent provision in the city charter. In the opinion in the case of *Ellis, City Solicitor,* v. *Urner, City Aud.,* 125 Ohio St., 246, 181 N. E., 22, at page 250 it is said:

"Inasmuch as deputy clerks and deputy bailiffs sustain a close fiduciary and confidential relation to their principal, it is highly impracticable to determine merit and fitness by competitive examination, and the principal for whom they work must necessarily be intrusted with the responsibility of selection. The Legislature recognized the necessity for this discretion."

With this pronouncement this court is in complete accord.

In *Underwood et al., Civil Service Commrs.,* v. *Isham, Judge,* 61 Ohio App., 129, 22 N. E. (2d), 468, it is held in paragraph one of the syllabus:

"A conflicting municipal ordinance or municipal charter provision, notwithstanding the 'home rule' provision of Article XVIII of the Constitution, cannot stand as against an act of the Legislature, passed under its special power to pass laws creating courts inferior to the Courts of Appeals reserved by Article IV of the Constitution."

Other rules of construction likewise aid us in arriv-

ing at the conclusion that the provisions of Sections 1579-168 and 1579-175, General Code, must take precedence over anything to the contrary in Section 1579-161, General Code. One is the rule which prescribes that where the language of a section is clear and unambiguous it must take precedence over language in another section which is ambiguous and uncertain of meaning.

Another rule is set forth in *State, ex rel. Guilbert, Aud., v. Halliday, Aud.*, 63 Ohio St., 165, 57 N. E., 1097, at page 169, as follows:

"In so far as these two enactments are irreconcilable, effect must be given to the one which is the later law."

To the same effect it is set forth in *State, ex rel. Hamilton Gas & Coke Co., v. City of Hamilton*, 47 Ohio St., 52, 23 N. E., 935, at pages 69 and 70, as follows:

"But, if such repugnancy did exist in the present case, it is one of the settled rules of construction that when, in a statute, there are several clauses which present, as compared with each other, an irreconcilable conflict, the one last in order of date or local position must prevail, whether the conflicting clauses be sections of the same act, or merely portions of the same section."

It is the conclusion of this court that the judgments of the Common Pleas Court are contrary to law and that the relators have not shown a clear right to the extraordinary relief prayed for. Coming now to render the judgments which should have been rendered by the Common Pleas Court, this court renders final judgment against relators and each of them, all of the judges concurring.

*Judgments reversed.*

NICHOLS, P. J., CARTER and PHILLIPS, JJ., concur.