**Regina A. MACE, Plaintiff,**

v.

**CITY OF AKRON, et al., Defendants.**

**No. 5:96 CV 1875.**

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 16, 1998.

---

Edmund M. Sawan, Sawan & Farris, Akron, OH, Nancy Holland Myers, Holland & Myers, Akron, OH, for Regina A Mace.

Elaine B. Davidson, Patricia Ambrose Rubright, City of Akron Law Dept., Akron, OH, for City of Akron.

Hilary S. Taylor, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Elaine B. Davidson, Patricia Ambrose Rubright, City of Akron Law Dept., Akron, OH, for Mary T. Sammon.

### ORDER

SAM H. BELL, Senior District Judge.

### I. *INTRODUCTION*

Now before the court is a motion to dismiss and for summary judgment filed by Defendants City of Akron and Mary Sammon. (Docket # 13.) Plaintiff Regina A. Mace filed this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, the

Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq.*, and Ohio common law. On September 23, 1996, the court granted the parties discovery as to the limited issues of jurisdiction and immunity. (Docket # 5.) In light of such discovery, Defendants assert that Ms. Mace has failed both to state a claim upon which relief may be granted and to establish that there are any genuine issues of material fact. For the reasons that follow, the court agrees, and shall grant Defendants' motion as it relates to Mace's federal claims.

## II. *BACKGROUND*

In June, 1979, Regina Mace began work as a "Sessions Clerk" at the Akron Municipal Court. (Pl.'s Ex. B, Attach. 1.) At some time in the 1980's, Ms. Mace was reclassified as a "Felony Court Bailiff," a job in which she performed until 1995. (Mace Aff. ¶¶ 3, 5.) In January, 1995, Mace came under the supervision of Mary Sammon, a new administrator for the Court. Soon after Ms. Sammon assumed her position, Mace informed Sammon that she suffered from certain physical problems which required that she use a workstation computer with calendar software. (*Id.* ¶ 5.) Mace's request for the computer and software was never granted. (*Id.* ¶ 6.)

In the months that followed, Mace's relationship with Sammon quickly deteriorated. Mace's personnel file reveals a series of entries, made by Sammon, that detail the extent of that deterioration. In each entry, Sammon notes a particular workplace incident or issue that implicates Mace. For example, in some entries, Sammon notes that Mace was tardy in arriving for work. (*See, e.g.,* Defs.' Ex. 17.) In others, she indicates that Mace had difficulty communicating with various judicial officers of the Court. (*See, e.g.,* Defs. Ex. 22.) Mace was disciplined for certain incidents, while others occurred but were not brought to Mace's attention. (Mace Aff. ¶ 14.)

While working as a Felony Court Bailiff, Mace has engaged in various activities outside of her job that ultimately came to the attention of Sammon. At one point, she spoke with a representative of the American Federation of State, County, and Municipal Employees about general "union activity." (*Id.* ¶ 10.) She also organized various after-hours social activities for court employees. (*Id.* ¶ 9.) In Summer, 1995 Mace signed a proposal for the creation of a grievance panel to resolve employee disciplinary disputes. (Pl.'s Ex. B, Attach. 7.)

On November 22, 1995, Sammon informed Mace that she was suspended from her position for two weeks. (Mace Aff. ¶ 15.) Subsequently, Mace learned that she had been permanently demoted from the Felony Court Bailiff position to a position as a "Traffic Court Clerk." (*Id.* ¶ 16.) On December 5, 1995, that demotion was approved by a unanimous vote of all judges of the Akron Municipal Court. (Sammon Aff. ¶ 30.) As a Traffic Court Clerk, Mace earns over $5 per hour less than she did previously. (Pl.s' Ex. E–1 at 4.) On January 1, 1996, Mace filed a complaint about her demotion with the Equal Employment Opportunities Commission, which granted her a right-to-sue letter. In her complaint, Mace alleged that Sammon and the City of Akron deprived her of rights secured to her under the First and Fourteenth Amendments to the United States Constitution. She also alleged that she was deprived of her rights under the Americans with Disability Act, and Ohio common law. On August 2, 1996, Mace filed suit in the Summit Court of Common Pleas, naming Sammon and the City of Akron as defendants. Sammon and the City then petitioned for removal of the case to this court pursuant to 28 U.S.C. § 1441(a).[1]

## III. *SUMMARY JUDGMENT*

The Court of Appeals for the Sixth Circuit has summarized the standard of review governing motions for summary judgment under Federal Rule of Civil Procedure 56 as follows:

> Summary judgment is appropriate where there is no genuine issue of material fact ... and the moving party is entitled to

---

1. On April 2, 1997, Mace filed an amended complaint pursuant to Fed.R.Civ.Pro. 15. (Docket # 16.)

judgment as a matter of law.... [The] court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party.

The moving party has the burden of conclusively showing that no genuine issue of material fact exists. Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim. By its very terms, this standard provides that the existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted."

*LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993) (citations omitted). With this standard in mind, the court shall analyze Defendants' present motion.[2]

### IV. ANALYSIS

#### A.

■ In Count One of her complaint, Mace brings an action pursuant to 42 U.S.C § 1983. That section provides, in pertinent part, that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Mace specifically asserts that, in demoting her, Sammon deprived her of her right to free speech under the First Amendment and her right to due process under the Fourteenth Amendment.

#### 1.

■ Defendants first challenge Mace's ability to bring an action against the City of Akron. They argue that any actions taken by Sammon were taken on behalf of the Akron Municipal Court, not the City of Akron. As an arm of the State of Ohio, the Court is not subject to liability as a "person" under the terms of § 1983. *See Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir.1988) ("The Akron Municipal Court is part of the Ohio state court system, established by the Ohio state legislature."); *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir.1997) (noting that "unlike counties and municipalities, *state* governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment to the United States Constitution") (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Moor v. Alameda*, 411 U.S. 693, 717–21, 93 S.Ct. 1785, 1799–801, 36 L.Ed.2d 596 (1973)). Conversely, as a municipality, the City of Akron is subject to a suit brought under § 1983, at least under certain circumstances. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Mertik v. Blalock*, 983 F.2d 1353, 1358 (6th Cir.1993) ("Local governments can be subject to suit under 42 U.S.C. § 1983.") (citing *Monell*).

The parties devote much effort debating whether or not Sammon and Mace are "employees" of the City. Each proffers its own conception of employment, and cites to various cases that describe the employment rela-

---

**2.** In her Brief in Opposition, Mace notes that the court has yet to grant discovery on any issues related to the merits of this case. (Br. in Opp. at 4 (citing Docket # 5).) The court agrees, but finds that the limit discovery which it has granted is sufficient to consider the arguments raised in Defendants' motion. *Cf. Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir.1989) ("We, like the district court, however, are persuaded that the facts here are largely undisputed. Hence, although no discovery had occurred by the time of the district court ruling, there is no evidence that discovery would have disclosed disputed material facts in support of Chilingirian's claim.").

tionship. This discussion, however, is largely irrelevant; since *Monell,* the Supreme Court has consistently held that a municipality may not be held liable under any theory of respondeat superior. *Leatherman v. Tarrant County Narcotics and Intell. Coord. Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993); *Board of County Com'rs of Bryan County v. Brown,* —— U.S. ——, ——, 117 S.Ct. 1382, 1387, 137 L.Ed.2d 626 (1997). In fact, in *Monell* itself, the Supreme Court specifically prohibited any attempt to hold a municipality liable simply because one of its agents or employees deprived an individual of his constitutional rights. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036.

It is also irrelevant that the City would provide any funds that might be used to pay a damage award. In *Mumford v. Basinski,* 105 F.3d 264 (6th Cir.1997), the Sixth Circuit held that a government entity could not be held liable under § 1983 solely because it would provide the funds for an award of backpay damages. The plaintiff in *Mumford* brought suit against an administrative judge of an Ohio common pleas court. After dismissing the case against the judge in his official capacity, the district court concluded that the "true remaining defendant" was the county in which the court was located. *Mumford v. Zieba,* 915 F.Supp. 917, 919 (N.D.Ohio 1995). Just as Ohio municipalities provide support for municipal courts, Ohio counties provide support for the state's courts of common pleas. *See Mumford v. Basinski,* 105 F.3d at 269 ("[T]he Ohio legislature has compelled the county governments to provide support for the operation of the common pleas courts within their borders."). The district court reached its conclusion after noting that the plaintiff's claims were "really aimed at the County because the County is the true entity which will pay for this type of award." *Id.* But on appeal, the Circuit held that this conclusion was incorrect. "The lower court erroneously concluded that the 'true remaining defendant' following the dismissal of Zieba in his official capacity was Lorain County." *Mumford v. Basinski,* 105 F.3d at 270 n. 9.

■ Instead, Mace must establish that Sammon's acts represent the City's official policy. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. In *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Supreme Court clarified just how lower courts are to decide whether an act represents "official policy." The Court considered the claim of a plaintiff, Praprotnik, who was transferred and later laid off by the City of St. Louis. Praprotnik brought suit against the city under § 1983, alleging that his First Amendment rights had been violated. The parties disputed whether the city could be held liable for the decisions taken by plaintiff's supervisors. After a jury found in plaintiff's favor, the city appealed. A panel of the Eighth Circuit Court of Appeals affirmed, after finding that Praprotnik's immediate supervisors established final policy with respect to his transfer and ultimate termination. Consequently, these supervisors could render the city liable under § 1983.

■ The Supreme Court, however, reversed. It held that policy makers are to be identified by reference to state law. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official has final policy-making authority is a question of state law." *Id.,* at 122, 108 S.Ct. at 924 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). The Court further noted that "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law." *Id.,* at 123–26, 108 S.Ct. at 925–26 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). It also clarified that "the authority to make municipal policy is necessarily the authority to make *final* policy." *Id.* at 126, 108 S.Ct. at 926 (emphasis in original). *See also*

*McMillian v. Monroe County*, —— U.S. ——, —— – ——, 117 S.Ct. 1734, 1736–37, 138 L.Ed.2d 1 (1997) (applying *Praprotnik* ).

In this case, the court must first decide what is often assumed in § 1983 cases involving a municipal government: does state law grant the City the authority to take the action about which Plaintiff complains? Only then may the court address the question more commonly considered: did the supervisor act pursuant to such authority to create a policy? The parties agree that Sammon acted either on behalf of the Akron Municipal Court or the City of Akron. That agreement, however, goes no further. Therefore, the court must determine which hat Ms. Sammon wore when she took the actions against Ms. Mace which led to Mace's demotion. *Cf. McMillian*, —— U.S. at ——, ——, 117 S.Ct. at 1736, 1737 ("Here, the parties agree that Sheriff Tate has 'final policymaking authority' in the area of law enforcement. They sharply disagree, however, about whether Alabama sheriffs are policymakers for the State or for the county when they act in a law enforcement capacity."); *Eggar v. City of Livingston*, 40 F.3d 312, 314 (9th Cir.1994) ("The crucial factor is whether under state law the acts in question were performed under the municipality's or the state's authority.").

Under *Praprotnik*, the court must make this determination by turning to the law of the state of Ohio. *Cf. McMillian*, —— U.S. at ——, 117 S.Ct. at 1737 ("[O]ur inquiry is dependent on an analysis of state law. This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.") (citations omitted). Ohio law clearly distinguishes between municipal courts and the municipalities in which they sit. In *Foster*, the Sixth Circuit Court of Appeals affirmed that the municipal court is distinct from the City of Akron. The plaintiff in *Foster* brought suit against the municipal court, and attempted to hold the court liable under

§ 1983 as arm of the City of Akron. The Circuit found that the municipal court was an arm of the State of Ohio, not Akron.

The Akron Municipal Court ... is subject to the supervision of the Ohio Supreme Court. Ohio Const., Art. IV, § 5. The municipal court may not be abolished by the city council, nor may the council expand or restrict the court's jurisdiction. *See State ex rel. Cherrington v. Hutsinpiller*, 112 Ohio St. 468, 147 N.E. 647 (1925). The territorial jurisdiction of the Akron Municipal Court is not coextensive with the city limits of Akron. Ohio Rev.Code § 1901.02(B). The employees of the Akron Municipal Court are not city employees subject to the authority of the Akron Civil Service Commission. *Dugan v. Civil Service Commission of Akron*, 9 Ohio App.3d 218, 459 N.E.2d 618 (1983).

*Foster*, 864 F.2d at 418–19. Consequently, it held that the court was immune from prosecution under the protections afforded state governments by the Eleventh Amendment.

*Foster* did not, however, decide the specific issue now raised by Defendants in this case. The *Foster* court considered only the liability of the municipal court. It did not address whether the supervisor in that case could be held considered a policy-maker of the city. Thus, this court must further probe the precise nature of the relationship between Akron and its municipal court.

The Akron Municipal Court, while distinct from the City of Akron, remains dependent on it. The Ohio Constitution provides for the creation of municipal courts in Article IV, § 1:

The judicial power of the state is vested in a supreme court, courts of appeal, courts of common pleas and divisions thereof *and such other courts inferior to the supreme court as may from time to time be established by law.*

(emphasis added). Acting pursuant to Article IV, the Ohio legislature established Ohio's municipal courts in Ohio Revised Code Chapter 1901. Chapter 1901 does more, however, than just establish Ohio's municipal court system. It imposes specific obligations on municipalities served by the court. For example, in § 1901.36, the legislature com-

mands that municipal legislative authorities provide support for any municipal court within its borders. That section also specifically directs that the salaries of certain court employees be paid out of the municipality's treasury.

> The legislative authority of a municipal court shall provide suitable accommodations for the municipal court and its officers. The legislative authority of a county-operated municipal court may pay rent for the accommodations.

> The legislative authority shall provide for the use of the court suitable accommodations for a law library, complete sets of reports of the supreme and inferior courts, and such other law books and publications as are considered necessary by the presiding judge, and shall provide for each courtroom a copy of the Revised Code.

> The legislative authority shall provide any other employees that are necessary, each of whom shall be paid such compensation out of the city treasury as the legislative authority prescribes, .... It shall provide all necessary form books, dockets, books of record, and all supplies, including telephone, furniture, heat, light and janitor service, and for such other ordinary or extraordinary expenses as it considers advisable or necessary for the proper operation or administration of the court.

Ohio Rev.Code § 1901.36(a) (Anderson 1992); *see also State ex rel. Taylor v. City of Delaware,* 2 Ohio St.3d 17, 442 N.E.2d 452 (1982) (holding that municipalities have a "clear legal duty" to provide suitable facilities for a municipal court). Thus, in fulfilling its statutory obligations, the City of Akron plays a significant role in the employment of both Ms. Sammon and Ms. Mace. Both Sammon and Mace receive paychecks from the City of Akron. (Mace Aff. ¶¶ 3, Attach. 2, 3; Pl.'s Ex. E, E–1.) Both women are eligible to participate in the City's health and insurance plan. (Mace Aff. ¶¶ 3, 5; Pl.'s Ex. E.) Both even wear a City of Akron employee identification badge while at work. (Mace Aff. ¶ 4.)

Nevertheless, Ohio law clearly vests the authority to manage court personnel with the municipal court, not the City. In *Dugan v. Civil Serv. Comm'n,* 9 Ohio App.3d 218, 459 N.E.2d 618 (1983), the Ohio Ninth District Court of Appeals considered the appeal of two deputy clerks of the Akron Municipal Court. Upon termination, the clerks sought the protections of the City's Civil Service Commission. The appellate court considered the jurisdiction of the municipal court and the statutory authority which created the deputy clerk positions. It then held that, because the clerks were appointed by the municipal court clerk pursuant to Ohio Rev. Code § 1901.31(H), and not by the City, the deputies did not fall within the commission's jurisdiction. *Id.* at 219, 459 N.E.2d 618 ("Because deputy clerks are appointed by the clerk pursuant to R.C.1901.31(H), they do not fall within the stated jurisdiction of the commission.").

Mace notes that, unlike the plaintiff deputies in *Dugan,* both she and Sammon work as employees provided by the City under Ohio Rev .Code § 1901.36. That section, unlike § 1901.31(H), vests authority to fund these positions in the host municipality, subject only to the reasonable requests of the municipal court. *See State. ex rel. Cleveland Municipal Court v. Cleveland City Council,* 34 Ohio St.2d 120, 296 N.E.2d 544 (1973) ("Absent an express statutory duty, the legislative authority of a municipal corporation are not required to allocate all funds sought for the administration of justice by a municipal court.; The appropriate governmental authority must allocate its portion of those funds necessary to facilitate the administration of justice by its municipal court."). Thus, Mace asserts, the decision in *Dugan* is inapplicable to her present claims against the City.

The court, however, disagrees. In *Dugan,* the appellate court interpreted longstanding Ohio precedent and established the broad power of the municipal court, as a derivative power of the state, to administer all its employees.

> Article IV of the Constitution of the state of Ohio, which establishes the Supreme Court, the Courts of Appeals and the Courts of Common Pleas, also grants to the state legislature the exclusive power to establish other courts inferior to the Supreme Court. *That power to establish car-*

ries with it the authority to administer those courts. including the right to provide for the appointment, status, tenure and discharge of court employees. *State ex rel. Cleveland Municipal Court v. Cleveland City Council*, 34 Ohio St.2d 120, 63 O.O.2d 199, 296 N.E.2d 544 (1973); *State, ex rel. Ramey v. Davis* (1929), 119 Ohio St. 596, 165 N.E. 298; *State ex rel. Welsh. v. Hoffman* (1941), 68 Ohio App. 171, 22 O.O.324, 40 N.E.2d 204; and *Underwood v. Isham* (1939), 61 Ohio App. 129, 15 O.O. 110, 22 N.E.2d 468.

(emphasis added). Moreover, in at least one decision, the Sixth Circuit has held that municipal courts, not municipalities, retain the authority to make policy decisions concerning court employees.

In addition, the City of Garfield Heights cannot be held responsible for the acts of the Municipal Court employees because municipal courts are part of the state court system and are not subject to the supervision of municipal governments. The City has no authority over [plaintiffs] Stralka and Kapla. *Dugan v. Civil Serv. Comm'n*, 9 Ohio App.3d 218, 459 N.E.2d 618, 619 (1983). The Ohio legislature possesses the exclusive authority to create municipal courts, Ohio Constitution Article IV, § I; *see Behrle v. Beam*, 6 Ohio St.3d 41, 451 N.E.2d 237, 238 (1983). *See Dugan*, 459 N.E.2d at 619.

*Mancini v. City of Garfield Heights, Ohio*, 37 F.3d 1499, 1994 WL 548830 (October 6, 1994). Finally, even if she did act as an agent of the City, Sammon lacked the final authority to demote Mace, because her decision was subject to the approval of the Akron Municipal Court judges. (Defs.' Ex. A; Sammon Aff. Ex. 8 at 9–10.) *Cf. Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir.1993) ("There is no showing that the Director does not retain the power to review policy statements issued by the Chief of Police regarding drug testing. Consequently, we conclude that Chief Hanton did not possess the authority to make final policy regarding drug testing of police officers."); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1000 (6th Cir.1994) ("Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.") (quoting *Feliciano* ). Therefore, the court finds that Defendant Sammon did not, and indeed, could not, act as a policymaker for the City of Akron when she took the actions at issue in this case. As a result, the court shall dismiss Mace's claims against the City brought under § 1983.[3]

2.

■ Defendants next argue that Ms. Sammon is protected against judgment on Plaintiffs' § 1983 claims under the doctrine of qualified immunity. "Qualified or 'good faith' immunity is an affirmative defense that is available to government officials performing discretionary functions." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992). A state official is entitled to qualified immunity when her conduct was objectively reasonable in light of clearly established rules and the information then possessed by the official. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)); *see also Johnson v. Fankell*, —— U.S. ——, ——, 117 S.Ct. 1800, 1803, 138 L.Ed.2d 108 (1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Once a defendant has

---

3. As noted above, the Akron Municipal Court is immune from suit under § 1983. *See Foster v. Walsh*, 864 F.2d 416 (6th Cir.1988). Thus, because the court finds that Sammon acted on behalf of the municipal court, it must also dismiss Mace's claims against Ms. Sammon in her official capacity. *See McMillian v. Monroe County, Alabama*, —— U.S. ——, —— n. 2, 117 S.Ct. 1734, 1737 n. 2, 138 L.Ed.2d 1 ("We have explained that a suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent,' and that victory in such an 'official-capacity' suit 'imposes liability on the entity that [the officer] represents.' ") (citations omitted). *Cf. Pusey v. City of Youngstown*, 11 F.3d 652, 657–658 (6th Cir.1993) ("Because Cronin acts as a state agent when prosecuting state criminal charges, the suit against Cronin in her official capacity is to be treated as a suit against the state. Again, a suit against a state is not cognizable under 42 U.S.C. § 1983.") (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)).

presented facts to suggest that she acted within the scope of her discretionary authority during the events in question, the plaintiff bears the ultimate burden of showing that the defendant is not entitled to qualified immunity. *Rich v. City of Mayfield Heights,* 955 F.2d at 1095 (citing *Wegener v. Covington,* 933 F.2d 390, 392 (6th Cir.1991)).

◼ Thus, when faced with a motion for summary judgment based on qualified immunity, a court must consider two issues:

(1) whether the plaintiff has asserted violation of [a] known civil constitutional right; and

(2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights.

*Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir. 1993) (citing *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)); *see also Turner v. Scott,* 119 F.3d 425, 429 (6th Cir.1997) (citing *Siegert; Purisch v. Tennessee Technological Univ.,* 76 F.3d 1414, 1423 (6th Cir.1996)). If the court answers either question in this two-part analysis in the negative, then it must grant summary judgment. Accordingly, this court first considers whether Ms. Sammon's conduct violated Ms. Mace's constitutional rights. *See Silver v. Franklin Township,* 966 F.2d 1031, 1035 (6th Cir.1992) ("[B]efore reaching a qualified immunity issue a court should determine whether there has been a constitutional violation.") (citation omitted).

*a.*

◼ Mace first argues that she was demoted in retaliation for speech protected under the First Amendment. In response to Defendants' motion, she identifies three specific incidents as speech which motivated Sammon's actions against her: (1) Mace participated in after-hours socializing with other employees; (2) Mace informed Sammon of a disability and a need for reasonable accommodation; (3) Mace signed and presented a proposal for an grievance arbitration panel for municipal court employees. (Br.in Opp. at 25.)

The First Amendment protects a public employee from adverse action taken in retaliation for his speech, if his speech may be fairly characterized as constituting speech on a matter of public concern and his interest in that speech is not outweighed by the interest of the State, as an employer, in promoting the efficiency of the public services it performs. Whether speech addresses a matter of public concern is a question of law, determined by the content, form, and context of a given statement, as revealed by the whole record. In order to conclude that speech addresses a matter of public concern, this court must be able to fairly characterize the expression as relating to any matter of political, social, or other concern to the community.

*Chappel v. Montgomery County Fire Protect. Dist. No. 1,* 131 F.3d 564, 573 (6th Cir.1997). Neither the first nor the second statement proffered by Mace relates to any matter "of political, social, other concern to the community." Instead, each relates to issues which are of concern only to Ms. Mace. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Brown v. City of Trenton,* 867 F.2d 318, 321 (6th Cir.1989) (quoting *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)).

◼ The third statement presents a closer question. The public has a definite interest in the fair administration of courts which its tax dollars support, including the courts' administration of its employment disputes. But "[t]he mere fact that public monies and government are related to the subject of a public employee's speech do[es] not, by [itself], qualify that speech as being addressed to a matter of public concern." *Chappel,* 131 F.3d 564, 576 (quoting *Barnes v. McDowell,* 848 F.2d 725, 734 (6th Cir. 1988)). Even if such speech does relate to a matter of public concern, Mace does not

demonstrate that the speech was a substantial or motivating factor in Sammon's decision to take action against her. *See Board of County Comm'rs v. Umbehr,* 518 U.S. 668, ——, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996). It is not enough merely to show that an adverse employment action followed protected speech. *Bailey v. Floyd County Bd. of Educ.,* 106 F.3d 135, 145 (6th Cir.1997). Consequently, the court finds that Mace did not suffer a deprivation of her First Amendment rights.

### b.

Mace next argues that she was deprived of her right to due process under Fourteenth Amendment. Specifically, she argues that she was deprived of a property interest in her job without the procedural safeguards which the Fourteenth Amendment mandates. When considering a due process claim, a court must: (1) find that a deprivation of life, liberty or property has taken place; and (2) determine how much process is due. *Ingraham v. Wright,* 430 U.S. 651, 673–74, 97 S.Ct. 1401, 1413–14, 51 L.Ed.2d 711 (1977). To identify a protected property interest, a plaintiff must look not to the Constitution itself, but to state law.

> As the Supreme Court has explained, property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. In a companion case …, the Court supplemented this basic definition by acknowledging that constitutionally protected property interests can be created by either explicit or implied contractual terms stating, [e]xplicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in light of the surrounding circumstances.

*Ramsey v. Board of Education of Whitley County, Kentucky,* 844 F.2d 1268, 1271–72 (6th Cir.1988) (citations, internal quotation marks and footmark omitted).

Mace asserts that Ohio law provides her with a property interest in not being demoted for any First Amendment speech or tardiness. As discussed above, the court finds that Mace was not demoted because of any speech protected under the First Amendment. Furthermore, the court finds that Ohio law does not afford Mace any property interest related to tardiness in reporting to work. Ohio specifically provides that, in general, employment in Ohio is "at-will." *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985). Consequently, an employer need not establish cause for altering an employment relationship, as long as it does not act contrary to law. *Id.* Ohio law does provides for exceptions to this general rule in the interests of justice. In particular, parties may agree to either an explicit or implicit contract, or they may create certain binding rights where an employer makes promises which reasonable induce action or forebearance by the employee. *Id.* at 103–4, 483 N.E.2d 150. *See also Wright v. Honda of America Mfg., Inc.,* 73 Ohio St.3d 571, 653 N.E.2d 381 (1995).

Neither of these exceptions applies in the present case. Mace contends that she was led to believe that she enjoyed a protected interest by both her dealings with her employer and the representations contained in its employee manual. But that very manual explicitly provides:

> The standard work week for full-time, judicial employees shall be from 8:00 a.m. to 4:30 p.m. Tardiness will be deducted from the employee's pay in increments of one-tenth hour per infraction. *Repeated tardiness or absenteeism is subject to further disciplinary action.*

(Sammon Aff. Ex. 11 (emphasis added).) In *Wright,* the Ohio Supreme Court specifically instructs that trial courts should consider information contained in "employee handbooks…. and written assurances reflecting company policy." *Id.* at 575, 653 N.E.2d 381. Consequently, no reasonable jury could find that Mace was herself reasonable in believing that tardiness was insufficient to warrant further action, including demotion. Thus, Mace has suffered no constitutional deprivation under either the First or Fourteenth

Amendments,[4] and Sammon is entitled to qualified immunity from Mace's claim under § 1983.

### B.

▇▇▇ In Count Two, Mace also brings claims against Sammon and the City under the Americans with Disabilities Act ("ADA"). As noted above, the court finds that Sammon acted on behalf of the Akron Municipal Court, not the City of Akron, when she took disciplinary actions against Mace. Consequently, the court must dismiss Mace's ADA claims against both the City and Sammon in her official capacity.

▇▇▇ In addition, Mace brings an ADA claim against Sammon in her individual capacity. Neither the Sixth Circuit nor the Supreme Court has explicitly held that an agent may be individually liable under the ADA. Other appellate courts, however, have established that individual supervisors may not be held to be liable under the ADA. For example, the Seventh Circuit Court of Appeals has affirmed "that there is no individual liability under the Americans with Disabilities Act." *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 n. 2 (7th Cir.1995) (citing *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir.1995)). Similarly, in *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996), the Eleventh Circuit Court of Appeals found that "the Disabilities Act does not provide for individual liability...." The court finds the reasoning of these appellate decisions persuasive. Moreover, in *Wathen v. General Elec. Co.*, 115 F.3d 400, 404 n. 4 (6th Cir.1997), the Sixth Circuit has intimated its agreement with its sister appellate courts, albeit in a case brought under Title VII, not the ADA.

The issue of an employee/supervisor's individual liability has been raised not only within the context of Title VII but also in its close counterparts, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, and the American with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12117. The liability schemes under Title VII, the ADEA, and the ADA are essentially the same in aspects relevant to this issue; they limit liability to the employer and use the term "agent" in defining employer. See 42 U.S.C. §§ 2000e–5(b), 2000e(b) (Title VII); 29 U.S.C. §§ 626(b), 630(b) (ADEA); 42 U.S.C. §§ 12112(a), 12111(5)(A)(ADA). Because Title VII, the ADEA, and the ADA define "employer" essentially the same way, an analysis based on Title VII, the ADEA, and the ADA case law is appropriate. *See E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.1995).

As a result, the court shall dismiss Mace's ADA claims against Sammon in her individual capacity.

### C.

In Counts Three through Eight, Mace brings claims under Ohio law. Under 28 U.S.C. § 1367, the court may exercise jurisdiction over Plaintiff's state law claims because they are so related to her federal law claims that they form part of the same case or controversy. *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court may also, however, decline to exercise such supplemental jurisdiction. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection if ... the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367. Because it has dismissed Mace's federal law claims, the court chooses to exercise its discretion and shall remand

---

**4.** In her Brief in Opposition, Mace alternatively contends that she suffered a deprivation of a liberty interest in her reputation, good name, honor and integrity. Specifically, she contends that Sammon injured her good name when she summarized various incidents reflected in Mace's personnel file. The Sixth Circuit has recognized an employee's liberty interest in reputation. But that interest is limited to protection against the public dissemination of false information. "[W]hen a non-tenured employee shows he has

been stigmatized by the voluntary public dissemination of false information on the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989) (citation omitted). Mace offers no evidence that any of Sammon's reflections were publicly disseminated. Consequently, the court finds *Chilingirian* inapposite to the present case.

her claims under Ohio law to the Summit County Court of Common Pleas. *Cf. Williams v. City of River Rouge,* 909 F.2d 151, 157 (6th Cir.1990) ("Where . . . the federal law claims are dismissed before trial on a motion for summary judgment, then the court will ordinarily dismiss the state law claims as well."); *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 233 (6th Cir.1997) (citations omitted) ("Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction[.]' Indeed, "if the federal claims are dismissed before trial, . . . the state claims [generally] should be dismissed as well.").

### V. *CONCLUSION*

The court hereby GRANTS Defendants' motion for summary judgment as it relates to Counts One and Two of the amended complaint. In addition, the court hereby REMANDS the remaining claims in the complaint to the Summit County Court of Common Pleas.

IT IS SO ORDERED.